[Cite as *State v. Sims*, 2018-Ohio-2916.]

# IN THE COURT OF APPEALS OF OHIO

### SEVENTH APPELLATE DISTRICT
### MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

KEITH SIMS,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 16 MA 0084.**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2014 CR 1143.

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Paul Gains, Prosecuting Attorney, and Attorney Ralph Rivera, Assistant Prosecutor*, Mahoning County Prosecutor's Office, 21 West Boardman Street, 6th Floor, Youngstown, Ohio 44503, for Plaintiff-Appellee, and
*Atty. Attorney Edward Czopur,* DeGenova & Yarwood, Ltd., 42 North Phelps Street, Youngstown, Ohio 44503, for Defendant-Appellant.

Dated:
July 16, 2018

**Donofrio, J.**

{¶1} Defendant-appellant, Keith Sims Jr., appeals his conviction following a jury trial in the Mahoning County Court of Common Pleas for one count of murder in violation of R.C. 2903.02(A), an unclassified felony, one count of murder in violation of R.C. 2903.02(B), an unclassified felony, and one count of felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree.

{¶2} On October 25, 2014, Julisa Harmon, Domanisha Morris, and Shamar Harmon were visiting their friend Miguel at his home in Youngstown, Ohio. This group heard a gunshot and went outside Miguel's home to investigate. They saw appellant and another group of girls across the street from Miguel's home. Julisa's group and Miguel went across the street to appellant's home to confront him. At some point, appellant pulled out a gun, set it down, and began fighting Miguel. During the fight between appellant and Miguel, Julisa, Domanisha, and Shamar got into a verbal altercation with the other group of girls. After the verbal altercation, Julisa, Domanisha, and Shamar got into a car and drove to Julisa's house.

{¶3} At Julisa's house, Julisa and Domanisha told Tamra Donlow and Clenesha Jackson about the altercations at Miguel's home. Julisa, Domanisha, Tamra, and Clenesha decided to drive back to Miguel's home that same night to check on him. On the way to Miguel's home, Julisa's group picked up another girl, Shaniece Wells.

{¶4} When Julisa's group returned to Miguel's neighborhood, they went to go check on Miguel. Once Julisa's group was ready to leave Miguel's neighborhood again, they encountered the other group of girls with whom they had an altercation earlier. Another verbal altercation ensued between the two groups. This verbal altercation ended when Shaniece and a girl from the opposing group realized they were related.

{¶5} After the altercation, Julisa's group began walking back to their vehicle. Before they reached the vehicle, three gunshots were fired in their direction. Two of the gunshots struck Shaniece: one through her abdomen and one through her left buttock. Shaniece died as a result of the gunshot wounds she suffered.

{¶6} On November 6, 2014, appellant was arrested and charged with Shaniece's murder. In addition to the murder and felonious assault charges, appellant faced firearm specifications pursuant to R.C. 2941.145(A) on all counts.

{¶7} Numerous pretrial motions were filed by appellant pro se, appellant's counsel, and the plaintiff-appellee, the State of Ohio. Appellant was incarcerated for the entire pretrial period and at no point waived his right to have a speedy trial.

{¶8} On August 20, 2015 and September 3, 2015, appellant filed pro se motions to dismiss the charges on the basis that his speedy trial right was violated. On September 14, 2015, the trial court denied these motions on the basis that appellant's counsel moved for and was granted a previous continuance which tolled the running of his speedy trial clock.

{¶9} On December 16, 2015, appellant filed another pro se motion to dismiss the charges on the basis that his speedy trial right was violated. The trial court overruled this motion on the same day.

{¶10} Appellant's trial was held on March 28, 2016. The state called numerous witnesses. At issue in this appeal is the testimony of the four eyewitnesses to Shaniece's death. The four eyewitnesses who testified at trial were Julisa, Clenesha, Tamra, and Domanisha. Julisa, Clenesha, and Tamra all testified that they did not see who fired the shots that hit Shaniece. But Domanisha testified that she saw appellant fire his gun in the group's direction. Domanisha also testified that she heard appellant yell "I shot one of them bitches."

{¶11} The jury returned guilty verdicts on all counts. On May 24, 2016, the trial court held a sentencing hearing. The trial court merged appellant's three guilty verdicts for sentencing purposes as Shaniece was the victim in all three counts. The trial court sentenced appellant to a minimum fifteen years of incarceration for the murder in violation of R.C. 2903.02(A) conviction and an additional three years for the accompanying firearm specification. The trial court ordered these sentences to run consecutively for a minimum total of eighteen years of incarceration. Appellant timely filed this appeal on June 8, 2016. Appellant now raises two assignments of error.

{¶12} Appellant's first assignment of error states:

APPELLANT'S RIGHT TO A SPEEDY TRIAL, PURSUANT TO THE UNITED STATES AND OHIO CONSTITUTIONS AND THE REVISED CODE, WAS VIOLATED AND IT WAS ERROR FOR THE TRIAL COURT TO DENY HIS MOTIONS TO DISMISS.

{¶13} Appellant argues that there was a total of 508 days between his arrest and his trial. Including motions which tolled his speedy trial clock, appellant argues that he was in jail awaiting trial longer than Ohio law permits.

{¶14} A review of a trial court's decision regarding a motion to dismiss based on statutory speedy trial grounds involves a mixed question of law and fact. *State v. McCall*, 152 Ohio App.3d 377, 2003–Ohio–1603, 787 N.E.2d 1241, ¶ 9 (7th Dist.). Deference is given to the trial court's findings of fact, but the appellate court independently reviews whether the trial court properly applied the law to the facts of the case. *Id.* When reviewing the legal issues regarding a statutory speedy trial case, the statutes are strictly construed against the state. *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706 (1996). After the statutory time limit has expired, the defendant has established a prima facie case for dismissal. *State v. Butcher*, 27 Ohio St.3d 28, 30-31, 500 N.E.2d 1368 (1986). At that point, the State has the burden to demonstrate any extension of the time limit. *Id.*

{¶15} Under Ohio law, when a defendant is charged with a felony, the defendant "[s]hall be brought to trial within two hundred seventy days after the person's arrest." R.C. 2945.71(C)(2). "[E]ach day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E).

{¶16} Appellant did not post bail nor did he waive his right to a speedy trial. Therefore, he should have been brought to trial within ninety days after his arrest on November 6, 2014. Appellant's trial did not begin until March 28, 2016. But as appellant and the state point out, there are several events that can toll the speedy trial clock.

{¶17} R.C. 2945.72 provides nine events that can toll the speedy trial clock. Three of the events in R.C. 2945.72 are applicable to the case at bar. R.C. 2945.72(D) extends the time for trial if a delay is caused by neglect or an improper act of the accused. R.C. 2945.72(E) extends the trial for motions, proceedings, or actions made or instituted by the accused. R.C. 2945.72(H) extends the time for trial if the accused files

a motion for a continuance and extends the time for trial for any reasonable continuance granted "other than upon the accused's own motion."

**{¶18}** In a judgment entry dated September 14, 2015, the trial court denied appellant's pro se motion to dismiss dated August 20, 2015 and September 3, 2015 on the basis that appellant's counsel previously filed a motion to continue. The trial court made no other findings of fact concerning this motion to dismiss. The trial court also made no findings of fact when it denied appellant's December 16, 2015 pro se motion to dismiss.

**{¶19}** The day of arrest does not count against the speedy trial time. *State v. Catlin*, 7th Dist. No. 06 BE 21, 2006-Ohio-6246, ¶ 12. Therefore, appellant's speedy trial clock begins to run on November 7, 2014, the day after his arrest. Appellant's original trial date was set for December 15, 2014.

**{¶20}** On November 19, 2014, appellant filed his discovery requests and a request for a bill of particulars. A defendant filing discovery requests tolls the running of the speedy trial clock. *State v. Brown*, 7th Dist. No. 03-MA-32, 2005-Ohio-2939, ¶ 40 citing R.C. 2945.72(E), *see also State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, 781 N.E.2d 159, ¶ 26. According to both appellant and the state, the state responded to appellant's discovery requests the next day on November 20, 2014. By this time, appellant's speedy trial time ran for thirteen days.

**{¶21}** On November 21, 2014, the state filed a reciprocal request for discovery. This ran appellant's speedy trial clock for one day bringing the total time that had run to fourteen days.

**{¶22}** Appellant never responded to the state's reciprocal request for discovery. "[A] defendant's failure to respond within a reasonable time to a prosecution request for reciprocal discovery constitutes neglect that tolls the running of speedy-trial time pursuant to R.C. 2945.72(D)." *State v. Whaley*, 7th Dist. No. 09 CO 30, 2010-Ohio-4853, ¶ 37 quoting *State v. Palmer*, 112 Ohio St.3d 457, 2007-Ohio-374, 860 N.E.2d 1011, ¶ 24.

**{¶23}** Appellant argues that his trial counsel's failure to respond to the state's discovery request should not toll his speedy trial clock indefinitely. Appellant argues that

the failure to respond should toll his speedy trial clock for a "reasonable amount of time that it should have taken for the defense to respond as determined by the trial court."

{¶24} For this particular issue, appellant and the state cite *State v. Palmer*, 112 Ohio St.3d 457, 2007-Ohio-374, 860 N.E.2d 1011. In *Palmer*, the Ohio Supreme Court held that a defendant's failure to respond within a reasonable amount of time to a prosecution's request for reciprocal discovery constitutes neglect that tolls the running of speedy trial time pursuant to R.C. 2945.72(D). *Id.* at ¶ 24. The Court continued "that a trial court shall determine the date by which the defendant should reasonably have responded to a reciprocal discovery request based on the totality of facts and circumstances of the case, including the time established for response by local rule, if applicable." *Id.* Appellant argues that, at most, the failure to respond to the state's discovery request should only toll the speedy trial time by 30 days.

{¶25} The Eighth District interprets the reasonable amount of time holding in *Palmer* to mean 30 days. *State v. Mango*, 8th Dist. No. 103146, 2016-Ohio-2935, ¶ 21. The Fourth District also implements a 30 day period. *State v. Saultz*, 09CA3133, 2011-Ohio-2018, ¶ 15.

{¶26} We do not need to reach the issue regarding how long a defendant's speedy trial clock is tolled due to the failure to respond to the state's reasonable request for reciprocal discovery. This is because appellant's counsel filed a motion to continue on December 5, 2014 to continue the trial set for December 14, 2014. This is less than 30 days after the state filed its reciprocal request for discovery. Any period of continuance granted upon a defendant's motion extends the time for a hearing or a trial pursuant to R.C. 2945.72(H). *State v. Garner*, 7th Dist. No. 11 CO 1, 2012-Ohio-6271, ¶ 15. Therefore, appellant's speedy trial clock was tolled between November 21, 2014 and December 5, 2014. The trial court granted this motion on December 11, 2014. By this time, appellant's speedy trial clock still only ran for fourteen days.

{¶27} In its judgment entry dated December 11, 2014, the trial court did not set a new date for trial but ordered that a pretrial hearing was to be held on January 29, 2015. After that pretrial hearing, in a judgment entry dated February 3, 2015, the trial court set appellant's trial date for August 24, 2015.

**{¶28}** Appellant argues that this continuance amounted to a court imposed time waiver as the trial court set a trial date that was over nine months after appellant's arrest. Appellant argues that his speedy trial clock should only be tolled by a reasonable amount of time due to his December 5, 2014 motion for a continuance. The state argues that this delay was not attributable to the state and should toll appellant's speedy trial clock until August 24, 2015.

**{¶29}** Appellant cites three cases arguing this specific point. First, appellant cites *State v. Clow*, 7th Dist. No. 01 CA 70, 2002-Ohio-1564. In *Clow*, this Court noted that any continuance pursuant to R.C. 2945.72(H) "must be reasonable both in purpose and in length." *Id* at ¶ 10. Second, appellant cites *State v. Howard*, 2d Dist. No. 27118, 2017-Ohio-692. In *Howard*, the Second District affirmed a trial court's order resetting a trial date to "the next available trial date" due to the defendant being hospitalized. *Id.* at ¶ 8-12. Third, appellant cites *State v. Wentworth*, 54 Ohio St.2d 171, 375 N.E.2d 424 (1978). In *Wentworth*, the Ohio Supreme Court held:

> "[T]hat where the continuance is of such length that it is facially unreasonable and seriously open to question, and thus outside the rationale upon which [*State v. Lee*, 48 Ohio St.2d 208, 357 N.E.2d 1095 (1976)] is based, the attendant facts and circumstances must be included in the record in sufficient detail so that the necessity and reasonableness of the continuance is demonstrable."

*Wentworth* at 175.

**{¶30}** In response, the state cites *State v. Pyles*, 7th Dist. No. 13 MA 22, 2015-Ohio-5594. In *Pyles*, this Court held "R.C. 2945.72(H) does not even require that a continuance granted upon the defendant's own motion or a joint motion be reasonable for the time period to be tolled." *Id.* at ¶ 57 citing *State v. Glass*, 10th Dist. No. 10AP-558, 2011-Ohio-6287.

**{¶31}** There is no transcript of the pretrial hearing on January 29, 2015. When no transcript is filed, the appellate court must presume the regularity of the proceedings. *Forman v. Kreps*, 7th Dist. Nos. 13 MA 0177, 14 MA 0031, 2016-Ohio-1604, ¶ 36. In this context, regularity means that appellant's counsel, counsel for the state, and the

trial court met and agreed that August 24, 2015 was an acceptable new trial date. This conclusion is also supported by the fact that all of appellant's motions to dismiss were filed pro se and not by his trial counsel. With this continuance being reasonable in this case, only fourteen days still had run on appellant's speedy trial clock by August 24, 2015.

{¶32} Before the trial date of August 24, 2015, appellant's counsel filed another motion for continuance dated August 10, 2015. In a judgment entry dated August 19, 2015, the trial court granted this continuance. In a judgment entry dated October 6, 2015, the trial court set appellant's trial for December 14, 2015. By December 14, 2015, still only fourteen days had run on appellant's speedy trial clock.

{¶33} And before the new trial date of December 14, 2015, appellant's counsel filed another motion for continuance on December 10, 2015. In a judgment entry dated December 16, 2015, the trial court set another trial date for March 28, 2016. Moreover, it was not error for the trial court to overrule appellant's December 16, 2015 pro se motion to dismiss due to appellant's counsel filing a motion to continue on December 10, 2015.

{¶34} Based on the foregoing, it can be seen that between appellant's arrest on November 6, 2014 and appellant's trial on March 28, 2016, only fourteen days had run on appellant's speedy trial clock. Therefore, appellant's speedy trial right pursuant to R.C. 2945.71 was not violated.

{¶35} Accordingly, appellant's first assignment of error lacks merit and is overruled.

{¶36} Appellant's second assignment of error states:

APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BASED, IN PART, ON THE CONFLICTING STORIES OF THE STATE'S WITNESSES.

{¶37} Appellant argues that the only evidence which showed he murdered Shaniece Wells was the testimony of the four eyewitnesses. Appellant argues that three of the eyewitnesses did not see who fired the shots that struck Shaniece. Appellant argues that the fourth eyewitness' testimony was so inconsistent with the other three

eyewitnesses' testimony that it renders his verdict against the manifest weight of the evidence.

**{¶38}** The claim that a verdict is against the manifest weight of the evidence concerns whether a jury verdict is supported by "the greater amount of credible evidence." *State v. Merritt*, 7th Dist. No. 09 JE 26, 2011-Ohio-1468 ¶ 45 citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The reviewing court weighs the evidence and all reasonable inferences and considers the credibility of the witnesses. *Thompkins* at 387. Although the appellate court acts as the proverbial "thirteenth" juror under this standard, it rarely substitutes its own judgment for that of the jury's. *Meritt* at ¶ 45*.* This is because the trier of fact was in the best position to determine the credibility of the witnesses and the weight due the evidence. *Id.* citing *State v. Higinbotham*, 5th Dist. No. 2005CA00046, 2006-Ohio-635.

**{¶39}** Only when "it is patently apparent that the factfinder lost its way," should an appellate court overturn the jury verdict. *Id.* citing *State v. Woullard*, 158 Ohio App.3d 31, 2001-Ohio-3395, 813 N.E.2d 964 (2d Dist.). If a conviction is against the manifest weight of the evidence, then a new trial is to be ordered. *Thompkins* at 387. "No judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause." *State v. Miller*, 96 Ohio St.3d 384, 2002-Ohio-4931, 775 N.E.2d 498, ¶ 36 quoting Ohio Constitution, Article IV, Section 3(B)(3).

**{¶40}** The evidence appellant takes issue with in this assignment of error is the testimony of all four eyewitnesses: Julisa, Clenesha, Tamra, and Domanisha. The state agrees that the main contention at trial was who shot Shaniece Wells.

**{¶41}** Julisa testified that, while visiting Miguel at his home, she heard a gunshot, looked outside, and saw appellant. (Tr. 223-224). After the gunshot, Miguel and appellant began arguing (Tr. 225). Appellant pulled out a gun, set it down, and began physically fighting with Miguel. (Tr. 225). Julisa and her friends then left after having a verbal altercation with a group of girls outside of appellant's home which was across the street from Miguel's home. (Tr. 226-227). Julisa, Domanisha, and Julisa's sister then picked up Tamra, Clenesha, and Shaniece and returned to Miguel's home. (Tr. 228-229).

**{¶42}** Julisa continued to testify that when she and her friends returned to Miguel's home, they encountered the other group of girls outside of appellant's home and another argument ensued. (Tr. 231-232). Once Shaniece and a girl from the other group realized they were related, the argument between the two groups stopped. (Tr. 232). When Julisa and her friends started walking away, she heard a gunshot. (Tr. 233). Julisa ran and hid behind the car and heard another gunshot. (Tr. 234). Julisa saw Shaniece fall to the ground after the second shot and heard Shaniece say she was shot. (Tr. 234). Julisa did not see who fired the shots. (Tr. 234).

**{¶43}** Clenesha testified that Julisa and Domanisha came and picked her up. (Tr. 261-262). They then stopped to pick up Shaniece. (Tr. 265). When Clenesha arrived at Miguel's place, Clenesha and the rest of her group started arguing with the other group of girls outside of appellant's home. (Tr. 267). Clenesha saw appellant standing in the doorway of his home. (Tr. 269-270). The argument stopped when Shaniece realized she was related to one of the girls in the other group. (Tr. 270-271).

**{¶44}** Clenesha continued to testify that after the argument, she and her group started walking down the street back to the car. (Tr. 274). While walking back, Clenesha heard a "gunshot and the glass." (Tr. 275). Clenesha then started to run towards the car. (Tr. 275). Clenesha heard two other gunshots after the first one. (Tr. 275-276). Clenesha heard Shaniece say "I got hit." (Tr. 276-277). After the shots were fired, Clenesha saw appellant outside of his house and then walk into his house. (Tr. 278-279).

**{¶45}** Tamra testified that Domanisha and Julisa picked her up and they all went to go pick up Shaniece. (Tr. 305-306). The group went to go check on Miguel after his physical altercation with appellant. (Tr. 307-308). Tamra and her friends encountered the other group of girls and a verbal altercation started. (Tr. 310-311). The argument ended when Shaniece realized she was related to one of the other girls. (Tr. 315).

**{¶46}** Tamra continued to testify that she and her group then started to walk towards the car. (Tr. 316). When they were walking, one gunshot was fired and the group started to run. (Tr. 317). After a pause, Tamra heard other shots but does not recall how many altogether. (Tr. 317-318). Shaniece was shot on the second round of shots. (Tr. 318-319). But Tamra did not see anyone with a gun that night (Tr. 324).

**{¶47}** Domanisha testified that she, Julisa, and Shamar were visiting their friend Miguel. (Tr. 352-353). Domanisha heard a gunshot and all of them went outside and saw appellant arguing with a neighbor. (Tr. 353-354). Domanisha remembers seeing appellant place a gun on a car and then appellant started "fighting the old man." (Tr. 355). The "old man" was Miguel. (Tr. 358). Around the time of the fight between appellant and Miguel, Domanisha and her group got into an argument with another group of girls. (Tr. 362-363). Domanisha and her group then left and picked up Clenesha, Tamra, and Shaniece. (Tr. 364-366). They then went back to go check on Miguel. (Tr. 367).

**{¶48}** When Domanisha and her group returned to Miguel's neighborhood, Domanisha saw appellant come out of his house, pull his shirt up, tap his waist, and told them to "move around." (Tr. 367-369). Domanisha saw appellant with a gun in his pants. (Tr. 369). The group then went to check on Miguel. (Tr. 371).

**{¶49}** Domanisha and her group then saw the other group of girls near appellant's home as they were about to leave. (Tr. 372). The two groups began arguing. (Tr. 374). The argument stopped once Shaniece and a girl from the other group realized they were related. (Tr. 375). Domanisha picked up a rock and threw it at appellant's house. (Tr. 375). Domanisha and her group then began walking back to their car. (Tr. 376).

**{¶50}** As Domanisha and her group were walking back to their car, Domanisha heard a gunshot. (Tr. 377). The group then ran and Domanisha leaned up against a garage. (Tr. 378). Domanisha saw Shaniece get shot. (Tr. 381). Domanisha testified that appellant was the one who shot Shaniece. (Tr. 382). Domanisha saw appellant fire the third shot. (Tr. 384-385). Domanisha heard appellant shout "I shot one of them bitches." (Tr. 387).

**{¶51}** Appellant argues that Domanisha's testimony is inconsistent with the other three witnesses. The inconsistencies appellant points to are:

1) Domanisha testified that her group went to appellant's house before and after seeing Miguel (Tr. 368-369) while the other three testified that they went to appellant's house after checking on Miguel (Tr. 230, 265, 307-308);

Case No. 16 MA 0084

2) Domanisha testified that her group spoke to appellant before going to see Miguel (Tr. 369-371) while Clenesha testified that they did not talk to appellant (Tr. 270);

3) Domanisha saw appellant fire the shots (Tr. 382) while the other witnesses did not see who fired the shots (Tr. 234, 275, 324);

4) Domanisha testified that the other group of girls were getting out of a truck when her group arrived (Tr. 372) while the other three witnesses testified that the other group was already at appellant's house (Tr. 231, 265-267, 310); and

5) Domanisha testified that Shaniece was walking when the first shot was fired (Tr. 380) while Tamra testified that Shaniece was running (Tr. 317-318).

{¶52} Appellant argues that these inconsistencies, coupled with the fact that Domanisha did not like appellant (Tr. 395) renders his conviction as against the manifest weight of the evidence. This argument does not have merit.

{¶53} The state elicited testimony that Shaniece died from a gunshot wound that struck one of her major arteries. (Tr. 578-580). There were three shell casings that were recovered from where Shaniece was shot and all three were fired from the same firearm. (Tr. 607-608).

{¶54} All four witnesses testified as to appellant's presence at the scene. Two of those witnesses testified that appellant had a firearm on him earlier in the night. All four testified that they heard three shots and heard Shaniece say that she was shot. Domanisha testified that she saw appellant fire the shots. Domanisha also heard appellant yell "I shot one of them bitches."

{¶55} Moreover, while Clenesha did not see who fired the shots, she testified that the only people outside when the shots were fired were her group and appellant. (Tr. 278-279).

{¶56} Although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact finder's determination of the witnesses' credibility. *State v. Deltoro*, 7th Dist. No. 07-MA-90, 2008-Ohio-4815, ¶ 62. While Domanisha's testimony is

somewhat inconsistent with the other three eyewitnesses, the jury was in the best position to assess Domanisha's testimony and we will not second-guess any determination concerning Domanisha's testimony made by the jury.

**{¶57}** Accordingly, appellant's second assignment of error lacks merit and is overruled.

**{¶58}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.
Robb, P. J., concurs.

[Cite as *State v. Sims*, 2018-Ohio-2916.]

_____

For the reasons stated in the Opinion rendered herein, the two assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**