[Cite as *State v. Howard-Ross*, 2015-Ohio-4810.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 13 MA 168 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| DERRICK HOWARD-ROSS | ) | |
| aka DERRICK ROSS-HOWARD | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from the Court of
                             Common Pleas of Mahoning County,
                             Ohio
                             Case No. 13 CR 65

JUDGMENT:                    Affirmed.

APPEARANCES:

For Plaintiff-Appellee:      Atty. Paul J. Gains
                             Mahoning County Prosecutor
                             Atty. Ralph M. Rivera
                             Assistant Prosecuting Attorney
                             21 West Boardman Street, 6th Floor
                             Youngstown, Ohio  44503

For Defendant-Appellant:     Atty. Scott C. Essad
                             721 Boardman-Poland Road, Suite 201
                             Youngstown, Ohio 44512

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

                             Dated:  November 17, 2015

WAITE, J.

{¶1} Appellant Derrick Howard-Ross aka Derrick Ross-Howard was convicted following a jury trial on October 8, 2013 in the Mahoning County Common Pleas Court of discharging a firearm into a habitation, felonious assault, and two firearm specifications. He was sentenced on October 18, 2013. He now appeals both his conviction and sentencing. As to his conviction, Appellant argues that "threats" made by the trial court had a "chilling effect" on his ability to participate in his defense. He also claims that a witness was improperly allowed to testify as to Appellant's alleged prior bad acts, and that the trial court abused its discretion when the judge refused to grant him a recess so that defense counsel could obtain a DVD player for use at trial. As to sentencing, Appellant argues that the trial court failed to comply with the statutory guidelines when it issued his sentence. For the following reasons, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

Factual and Procedural History

{¶2} Appellant and his female victim had previously been involved in a romantic relationship. At trial, there was a dispute as to whether that relationship ended prior to the incident at issue in this appeal and whether she was engaged in a relationship with the male victim in this case. Regardless, on the night of the incident the female victim was watching television on her couch with the male victim and her two-year old daughter. They heard a knock on the window and looked up to see Appellant knocking on the window with a gun.

{¶3} Both victims testified that Appellant shot into the window several times, striking the male victim with one or two bullets. After firing the shots, Appellant fled the scene. After police and emergency services arrived at the house, but before getting into an ambulance, the male victim asked to use the restroom. At trial, the male victim admitted that he went to the restroom to hide a gun that he was carrying. Shortly after the incident, Appellant was arrested.

{¶4} At trial, Appellant admitted that he shot into the house, but claimed that he did so in self-defense. According to Appellant, when he got to the house he saw a strange man with his girlfriend and he was concerned for her safety. He testified that he knocked on the window with his ring, not a gun, to see if she was in danger. He claimed that the male victim then fired at him, striking him with at least one bullet, but that he was unharmed because he was wearing a bulletproof vest at the time. Appellant stated that he returned fire before fleeing in fear.

{¶5} Despite Appellant's self-defense claims, the jury convicted him of one count of discharging a firearm into a habitation, in violation of R.C. 2923.161(A)(1)(c); felonious assault, in violation of R.C. 2903.11(A)(2)(D); and two firearm specifications, in violation of R.C. 2941.145(A). He was sentenced to eight years of incarceration for discharging a weapon, eight years on felonious assault, and three years on each firearm specification. The firearm specifications merged for sentencing purposes. The sentences were ordered to run consecutively. In the aggregate, Appellant was sentenced to nineteen years of incarceration. Appellant has timely appealed both his conviction and sentence.

### First Assignment of Error

During trial, the Appellant was gesturing to his attorney by snapping his fingers and making faces in reaction to witness testimony. The trial court said that he be [sic] kept it up, he would be placed in "the electric chair." This statement had a chilling effect on the Appellant's constitutional right to participate in his own defense, and constituted error and a violation of due process.

{¶6} Appellant argues that the trial court's threats to tape his mouth shut and strap him into some sort of electrified chair had a "chilling effect" on his ability to communicate with his counsel and deprived him of the right to participate in his defense. While Appellant concedes that his behavior during trial may have been distracting, he explains that he was merely attempting to get his counsel's attention. Even so, Appellant asserts that snapping his fingers, tapping a pen, and calling for his counsel did not warrant such dire threats from the court.

{¶7} The state does not directly address all of the court's admonishments, but cites Ohio caselaw supporting the trial court's threat to gag Appellant. The state emphasizes that this was caused by Appellant's behavior and argues that he cannot now take advantage of it in an effort to obtain reversal of an otherwise valid conviction. Further, the state argues that a trial court has discretion over enforcing its rules and in maintaining decorum while court is in session.

{¶8} "A trial judge is empowered to maintain decorum and enforce reasonable rules to insure the orderly and judicious disposition of the court's

business." *State v. Dumas*, 7th Dist. No. 12 MA 31, 2015-Ohio-2683, ¶20, citing *State v. Clifford*, 162 Ohio St. 370, 372, 123 N.E.2d 8 (1954). According to the United States Supreme Court, "trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations." *Dumas a*t ¶20, citing *Illinois v. Allen*, 397 US 337, 343, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

**{¶9}** Additionally, "there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant * * *: (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly." *State v. Greathouse*, 2d Dist. No. 21536, 2007-Ohio-2136, ¶75.

**{¶10}** The record here reveals that outside of the presence of the jury, the trial court engaged in the following colloquy with Appellant.

> **THE COURT**: I want this on the record. Mr. Ross, I am trying to give you a fair trial, and you have disrespected this court in your conduct. If you act out in my courtroom again, which you have done continuously, my bailiff has alerted me to it. I have observed it, and your lawyer - - I even observed him telling you to calm down. If you do it again, I am going to strap you into one of those electric chairs that the sheriff has, and I am going to tape your mouth, and you can be exhibited to the jury in that fashion. Instead of me treating you like a man, I am going to

treat you like the kind of guy that you are acting. So it's your choice. Do you want to do this the right way, or do you want to do it the hard way? I will go either way.

**[APPELLANT]**: I am very apologetic, Your Honor.

**THE COURT**: Well, you should be. If you do it again, you are going down hard. So don't do it. Act like a man while you are sitting here. You are trying to exercise your right to a fair trial. I am trying my darn best to give you a fair trial. But if you challenge me that way, the only thing I can do is stop you from disrupting what's going on here. So don't do it again.

(10/7/13 Trial Tr. Vol. I, pp. 233-234.)

{¶11} In Ohio, it is generally recognized that "given the myriad [of] safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and that the Constitution does not guarantee such a trial." *State v. Rupp,* 7th Dist. No. 05MA166, 2007-Ohio-1561, ¶83, quoting *State v. Jones*, 90 Ohio St.3d 403, 422 (2000).

{¶12} It is apparent from this record that some of the trial court's comments were inartfully phrased and are somewhat disturbing. However, these comments do not rise to the level of prejudicial error. First, both "threats" appear to be exaggerated statements used by the judge to make a point. The record does not provide detailed information as to the exact behavior by Appellant that triggered the court to admonish

him. However, all parties agree that at various points during trial, he snapped his fingers, tapped his pen on the table, and called for his attorney. While Appellant concedes that his behavior can be seen as disruptive, he explains that he was trying to get his counsel's attention. Regardless, several spectators were distracted by Appellant's behavior and the judge clearly felt that it was inappropriate.

{¶13} Second, the record reflects that these comments, and the entire discussion about Appellant's behavior, were made outside of the jury's presence. Thus, the jury, who was the finder of fact in this case, could not have based the decision to convict Appellant on the judge's admonishment. Finally, well-established law provides a trial court judge with great discretion in handling a disruptive defendant. The law allows a judge to bind and gag a defendant, cite him for contempt and take him out of the courtroom. See *State v. Greathouse, supra.* While some of the trial court's statements, particularly regarding an "electric chair," may be ill advised, Ohio law allows strong sanctions against disruptive defendants if that treatment is deemed necessary to ensure decorum in the courtroom. Accordingly, Appellant's first assignment of error is without merit and is overruled.

Second Assignment of Error

The trial court erred when it would not grant a mistrial, nor even a limiting instruction, when a witness blurted out that the Appellant raped her and bit her son.

{¶14} Appellant contends that the trial court abused its discretion in denying a mistrial after a witness blurted out that he had raped her, hit her, and bit her son.

Appellant claims that counsel objected to the testimony, moved to strike the statement and for a mistrial. The trial court erroneously overruled these motions on the basis that the court did not see the testimony as problematic. Appellant contends that the testimony was particularly harmful as there are few, if any, crimes worse than rape and harming a child and such testimony likely inflamed the jury.

{¶15} The state responds by arguing that the witness' testimony was in reasonable response to defense counsel's question, thus did not merit a mistrial. The state explains that the witness was asked why she still spoke to Appellant even after he allegedly shot into her home. She responded by stating that he had done harm to her in the past, yet she still loved him.

{¶16} As a trial court is entitled to broad discretion in considering a motion for a mistrial, the standard of review on appeal is whether the trial court abused that discretion. *State v. Love*, 7th Dist. No. 02 CA 245, 2006-Ohio-1762, ¶19, citing *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54, (1990) paragraph one of the syllabus. The decision to grant a mistrial "is an extreme remedy only warranted in circumstances where a fair trial is no longer possible and it is required to meet the ends of justice." *State v. Bigsby,* 7th Dist. No. 12 MA 74, 2013-Ohio-5641, ¶58, citing *State v. Jones,* 85 Ohio App.3d 723, 615 N.E.2d 743 (2d Dist.1990). As such, mistrial will not be granted "merely because some error or irregularity has intervened, unless the substantial rights of the accused or the prosecution are adversely affected." *Bigsby* at ¶58, citing *State v. Lukens,* 66 Ohio App.3d 794, 586 N.E.2d 1099 (10th Dist.1990).

**{¶17}** The Ohio Supreme Court has held that "the introduction of evidence tending to show that a defendant has committed another crime wholly independent of the offense for which he is on trial is prohibited." *State v. Breedlove,* 26 Ohio St.2d 178, 183, 271 N.E.2d 238 (1971), citing *State v. Hecter*, 19 Ohio St.2d 167, 249 N.E.2d 912 (1969), paragraph one of the syllabus. However, the Court has also noted an exception to this principle exists "where the prior offense, if shown to be part of a common plan or scheme and evidence thereof, is admitted to prove the elements of intent, motive, knowledge or identity." *Breedlove* at 183*.*

**{¶18}** The evidence at issue occurred during the female victim's testimony:

Q  Some guy shoots in your window for no apparent reason, according to you, endangers your daughter, and you still love him; is that what you are saying?

A  [Appellant] raped me.  He hit my face.

[Defense]  Objection, Your Honor.

A  He bit my son, and I still love that nigger.  So - -

[Defense]  I have no further questions.

(10/7/13 Trial Tr. Vol. I, pp. 230-231.)

**{¶19}** Outside of the presence of the jury, the testimony and its impact was discussed by the parties and the judge.  Defense counsel argued that as the trial court denied his request for a curative instruction, he intended to move for a mistrial.  The trial court correctly pointed out that while counsel had objected to the testimony,

he had, in fact, failed to request a cautionary instruction. Even so, the trial court disagreed with counsel's contention that the incidents qualified as prior bad acts. The trial court explained that the testimony was in direct response to counsel's question regarding why she could still love Appellant after he shot through her window and placed her child at risk. The trial court overruled the motion for mistrial stating: "I just disagree that it [the statement] is problematic." (10/7/13 Trial Tr. Vol. II, pp. 278-279.)

**{¶20}** An analysis of this issue must begin with the general rule that evidence of prior bad acts is inadmissible. See Evid.R. 402. Here, a witness blurted out testimony that Appellant allegedly committed a rape and two assaults. There is no question that this testimony would be inadmissible as evidence of a prior bad act. It is equally clear from this record that the testimony at issue does not tend to show intent, motive, knowledge, or identity, and so does not fall within the exception that would permit admission of this testimony.

**{¶21}** If evidence of a prior bad act is inadvertently offered by a witness in response to an innocent question, the appropriate remedy is to grant a curative instruction, rather than a mistrial. *State v. Mobley,* 2d Dist. No. 18878, 2002 WL 506626, *2 (April 5, 2002), citing *State v. Maddox,* 2d Dist. No. 18389, 2001 WL 726778 (June 29, 2001). Here, the trial court correctly pointed out that while Appellant objected to the witness' testimony, he did not request a curative instruction. The trial court failed to respond or rule on Appellant's bare-bones motion and counsel did not further explain or object until a recess was called. As a curative instruction

was not properly requested or granted, we must determine whether Appellant was harmed by the testimony.

**{¶22}** Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. *State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976), paragraph three of the syllabus, vacated on other grounds in 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154 (1978).

**{¶23}** Here, even though the testimony was improper, the record reveals that there is no reasonable probability that it contributed to Appellant's conviction. At trial, Appellant admitted that he shot through the victim's window. Although he presented an argument raising self-defense, there were significant problems with his story. First, there was only one bullet hole in the glass, which strongly suggests that only one shot was fired. Appellant has argued that his shot went through the exact bullet hole created by the male victim, whom Appellant contends shot first. Even if this argument were to be believed, the responding officers observed glass on the floor inside the window, consistent with the victims' stories that a shot was fired into the house from outside, but did not observe glass on the ground outside of the window, which would have been present if the shots were first fired from inside of the dwelling.

**{¶24}** Appellant also claims that he was protected from the shot allegedly fired by the male victim because he was wearing a bulletproof vest that night. However, at trial Appellant no longer had possession of the vest to support this claim. Finally, both victims testified that Appellant was the only person to display or fire a gun that

night, and the evidence of record supports this testimony. In light of this record, the witness' inadvertent testimony regarding Appellant's alleged prior bad acts did not contribute to his conviction and the testimony was harmless. Accordingly, Appellant's second assignment of error is without merit and is overruled.

Third Assignment of Error

The trial court abused its discretion and denied the Appellant his due process by imposing undue time constraints on his defense counsel in the presentation of his case.

{¶25} Appellant contends that the trial court improperly placed time restraints on the presentation of his defense. Specifically, Appellant complains that the trial court did not provide him with enough time to play a video of the male victim's prior statement to police, which Appellant alleges contradicted his trial testimony. Although Appellant agrees that a trial court has discretion over its docket and schedule, he urges that this contradiction was important to his defense and the trial court lacked a legitimate reason to force him to conclude his cross-examination of the male victim by the end of the day.

{¶26} In response, the state argues that a trial court is not required to grant a recess merely because counsel is unprepared for a witness. Even so, the state asserts that there were no grounds to impeach the witness. Appellant seeks to introduce the victim's differing statements regarding his romantic involvement with the female victim. The state explains that whether the victims were romantically

involved was irrelevant to the matter at hand. As the testimony was irrelevant, the state argues that there were no grounds to allow introduction of the video.

{¶27} Evid.R. 611(A) states that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to * * * (2) avoid needless consumption of time * * *."

{¶28} Pursuant to Evid.R. 607(A), "[t]he credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage." However, pursuant to Evid.R. 402, "[e]vidence which is not relevant is not admissible."

{¶29} Although Appellant makes general arguments to the effect that he was given insufficient time to cross-examine the male victim, the crux of his argument is that the trial court refused to allow a recess for defense counsel to obtain a DVD player. During the male victim's testimony, defense counsel asked him if he and the female victim were still dating. When he responded that they were, counsel asked him if he remembered making a previous statement to police to the contrary. The male victim testified that he did not remember making such a statement. At that point, counsel asked the trial court if it had equipment to play the DVD, which contained the male victim's video statement. The court responded that it did not have a DVD player. Counsel requested a recess to obtain equipment to play the DVD, which the trial court denied.

**{¶30}** During a hearing held in chambers, the judge explained that if counsel wanted to play a DVD, he was responsible for timely obtaining the necessary equipment. Counsel proposed to proffer the statement or attempt to bring in the video during Detective Patton's testimony, but the court responded that the video was inadmissible because whether the male victim lied about his relationship status with the female victim was irrelevant.

**{¶31}** The judge stated:

Yeah, but it's impeachment on a matter that means absolutely nothing. It's a so-what-type of a thing, and it is not admissible just to show that he said something different on another day. Whether or not he had a relationship with that woman means absolutely nothing as far as the issues of the case is concerned. And that's what the court's ruling is based upon. So that's fine. You saw it one way. I saw it another way.

(10/7/13 Trial Tr. Vol. II, p. 292.)

**{¶32}** The trial court was correct in its determination that this issue was irrelevant. Whether the male victim lied about his relationship status with the female victim has no relevancy as to the shooting, particularly as Appellant admits to his role in the incident. Further, their relationship status has no relevancy regarding Appellant's self-defense claims. As to any credibility concerns, Appellant's counsel was able to attack the male victim's credibility later in the trial when that victim testified that he told police he had been carrying a gun that night immediately, while Detective Patton testified that this victim did not volunteer the information to police.

{¶33} We also note that it is counsel's duty to arrive at court prepared. If a party wishes to present evidence that requires technology, it is counsel's duty to arrange for the necessary equipment. Accordingly, Appellant's third assignment of error is without merit and is overruled.

## Fourth Assignment of Error

At the sentencing hearing, incorrect sentencing guidelines were applied based solely on the Appellant's actions during the trial, and not pursuant to the Ohio Revised Code.

{¶34} Appellant contends that the trial court improperly considered his inappropriate courtroom behavior (snapping his fingers, tapping his pen, and calling out to his counsel), his perceived failure to take responsibility for his crime, and the perceived lack of truthfulness in his testimony when sentencing him. Appellant generally argues that consideration of these factors resulted in an improper sentence.

{¶35} The state has interpreted Appellant's arguments as contesting the imposition of consecutive sentences. However, Appellant appears to argue that the trial court considered improper factors during his sentencing, generally. Appellant does not once mention the imposition of consecutive sentences in his argument. Hence, we will confine our review to the issue raised by Appellant.

{¶36} Pursuant to R.C. 2929.14(A)(2), Appellant's eight-year sentences fall within the statutory range. Further, pursuant to R.C. 2929.14(B)(1)(a)(ii), Appellant's three-year sentence on a firearm specification is also within the statutory range. As the sentence fits within the statutory range, his sentence is not clearly contrary to law.

We next consider Appellant's argument as to the factors taken into consideration by the trial court.

**{¶37}** The record demonstrates that the trial court based Appellant's sentence on the dangerousness of his actions and his criminal history, both of which are appropriate factors for a court to consider. The trial court also emphasized that Appellant's actions not only placed the two victims in danger, but also placed the female victim's two-year old daughter in peril. The state did ask the trial court to consider Appellant's trial behavior, his refusal to take responsibility, and the state's belief that his testimony was untruthful. However, the record is devoid of any evidence that the trial court considered these factors in determining Appellant's sentence.

**{¶38}** The trial court did not mention Appellant's trial behavior during the sentencing hearing. The trial court did admonish Appellant during the sentencing hearing for speaking out of turn and commented that Appellant appeared to be bored, but these were clearly not taken into consideration for purposes of determining his sentence. This is particularly evident as the latter comment was made during the trial court's recitation of Appellant's appellate rights, which occurred well after his sentence was announced.

**{¶39}** The record also shows that the trial court disagreed with the state's contention that a defendant's decision whether to take responsibility for his actions should be considered. The judge explained that a defendant's choice to take responsibility for his actions is a factor considered in federal court, but not in state

court. Further, the court agreed with defense counsel's assertion that a defendant can take responsibility for his actions and still proceed to trial. Additionally, the judge stated that Appellant had taken some responsibility when he admitted to shooting the victim. Thus, it is clear from the record that the trial court did not improperly consider Appellant's alleged failure to accept responsibility, here.

{¶40} In regard to Appellant's credibility while testifying, the trial court did question the truthfulness of Appellant's testimony during the sentencing hearing. However, the record is devoid of any evidence to suggest that the trial court based Appellant's sentence on credibility. While Appellant appears to concede that some portion of his testimony was not entirely truthful, the trial court specifically stated that the dangerousness and seriousness of Appellant's actions were much more significant than any credibility issues.

{¶41} The record demonstrates that the trial court based his sentence on a number of relevant facts: the fact that multiple people, including a two-year old, were placed in danger as a result of Appellant's actions; the seriousness of the offense; Appellant's criminal history; and Appellant's status as a drug dealer and that he illegally carries a firearm. As this record demonstrates that the trial court considered permissible factors (the dangerousness of Appellant's conduct, the age and number of victims, and his criminal record), Appellant's arguments to the contrary are not well-taken.

{¶42} Accordingly, Appellant's fourth assignment of error is without merit and is overruled.

Conclusion

**{¶43}** While the trial court's admonishment of Appellant's disruptive behavior appears excessive and inartful, this record does not reflect any prejudice to Appellant and he was not denied a fair trial. Similarly, Appellant has been unable to show prejudice resulting from the female victim's testimony about Appellant's alleged prior bad acts. The trial court did not err in denying Appellant's counsel a recess to obtain a DVD player, as the evidence sought to be introduced was plainly irrelevant and inadmissible. Finally, the record is devoid of any evidence that the trial court considered improper factors in determining Appellant's sentence. Accordingly, the judgment of the trial court is affirmed.

Donofrio, P.J., concurs.

DeGenaro, J., concurs.