[Cite as *State v. Perry*, 2018-Ohio-3940.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

VINCENT A. PERRY,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 17 CO 0009**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2015-CR-367

**BEFORE:**
Cheryl L. Waite, Gene Donofrio, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed in part.  Remanded in part.

---

*Atty. Robert Herron*, Columbiana County Prosecutor and
*Atty. Tammie M. Jones*, Assistant Prosecuting Attorney
105 South Market Street, Lisbon, Ohio  44432, for Plaintiff-Appellee

*Atty. Edward A. Czopur*, DeGenova & Yarwood, Ltd., 42 North Phelps St., Youngstown, Ohio  44503, for Defendant-Appellant.

Dated:  September 24, 2018

---

**WAITE, J.**

**{¶1}** Appellant Vincent A. Perry appeals his conviction and sentencing entry filed on December 23, 2016 in Columbiana County Common Pleas Court. Appellant presents speedy trial, ineffective assistance of counsel, merger, and consecutive sentencing arguments. Appellant's speedy trial, ineffective assistance of counsel, and merger arguments are without merit. However, the trial court failed to properly incorporate the consecutive sentence findings pursuant to R.C. 2929.14(C) within its sentencing entry. Appellant's convictions and sentence are affirmed, but the matter is remanded to the trial court for a *nunc pro tunc* entry to correct Appellant's consecutive sentence within the sentencing entry.

Factual and Procedural History

**{¶2}** Appellant, a known drug dealer, had been living with his girlfriend in her apartment. At some point, they ended their relationship but Appellant refused to move out until three weeks later, as he had already paid his part of the month's rent. In the meantime, his ex-girlfriend entered into a relationship with the victim.

**{¶3}** The incident at issue occurred one week after Appellant moved out of the apartment. The ex-girlfriend had returned home from work and was leaving to buy cigarettes when she saw Appellant in the apartment complex parking lot. She advised Appellant that she would speak to him when she returned but that he was not permitted to enter her apartment while she was gone. She took a taxi to the local Circle K and then returned. She entered her apartment to find Appellant inside and talking to the victim. The ex-girlfriend's eighteen-year-old son was asleep on a chair and the victim's five-year-old daughter was asleep on the couch.

Case No. 17 CO 0009

{¶4} Appellant, his ex-girlfriend, and the victim spoke cordially for about two hours. Appellant began to plead with his ex-girlfriend to leave the victim and resume her relationship with Appellant. At 4:00 a.m., Appellant was asked to leave. Appellant stood up and walked to the door but before exiting, he turned to his ex-girlfriend and asked her if she really wanted to stay with the victim. When she said yes, Appellant exited the apartment but then fired at least two shots inside, striking the victim in the forearm.

{¶5} The ex-girlfriend called 911 and the police began searching for Appellant. The police initially could not locate Appellant, in part because he had not given his ex-girlfriend his real last name. However, officers eventually tracked Appellant down through use of his street name, "Boog-E." Appellant was arrested and jailed on August 8, 2015.

{¶6} Appellant was indicted on one count of felonious assault, a felony of the second degree in violation of R.C. 2903.11(A), one count of improperly discharging a firearm into a habitation, a felony of the second degree in violation of R.C. 2923.161(A)(1), and one count of carrying a concealed weapon, a felony of the fourth degree in violation of R.C. 2923.12(A)(2).

{¶7} On December 15, 2016, Appellant was convicted by a jury on all three counts. On December 23, 2016, the trial court sentenced Appellant to seven years of incarceration on the felonious assault conviction, two years on the improper discharge conviction, and one year for carrying a concealed weapon. The court ordered the sentences to run consecutively, for an aggregate total of ten years of incarceration. We granted Appellant's motion for leave to file a delayed appeal.

ASSIGNMENT OF ERROR NO. 1

APPELLANT'S RIGHT TO A SPEEDY TRIAL, AS GUARANTEED BY R.C. 2945.71 AND THE SIXTH AMENDMENT OF THE U.S. CONSTITUTION AND ART. I, SEC. 10 OF THE OHIO CONSTITUTION WAS VIOLATED.

{¶8}   Appellant explains that, ordinarily, a defendant must be brought to trial within 270 days of his arrest.  However, when the "triple count provision" applies, each day a defendant serves in jail counts as three days.  In this case, Appellant argues that the triple count provision applies and the state was required to bring him to trial within 90 days of his arrest.  Appellant concedes that he filed numerous motions and had three different attorneys appointed to his case which tolled the speedy trial time.  However, he argues that even after deducting the tolled events, he was not brought to trial until 293 days after his arrest.

{¶9}   In response, the state argues that, at worst, Appellant was brought to trial within 76 days of his arrest after deducting tolled time.  The state urges that Appellant's own actions caused all but one of the continuances.  As the state urges that the speedy trial clock does not resume following a continuance until the rescheduled trial occurs, it argues that all of the time between October 5, 2015 and December 13, 2016 was tolled.  Thus, the state asserts that Appellant was actually brought to trial within 58 days once the tolled time is deducted.

{¶10} Ohio recognizes both a constitutional and a statutory right to a speedy trial.  *State v. King*, 70 Ohio St.3d 158, 161, 637 N.E.2d 903 (1994).  The Sixth Amendment to the United States Constitution provides:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defen[s]e.

{¶11} In addition to the Sixth Amendment, Ohio provides a statutory speedy trial right. R.C. 2945.73(B) provides: "Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code." "A person against whom a charge of felony is pending: * * * (2) Shall be brought to trial within two hundred seventy days after the person's arrest." R.C. 2945.71(C)(2). "For purposes of computing time * * * each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E).

{¶12} Review of a trial court's decision regarding a motion to dismiss based on a violation of the speedy trial provisions involves a mixed question of law and fact. *State v. High,* 143 Ohio App.3d 232, 757 N.E.2d 1176 (7th Dist.2001), citing *State v. McDonald*, 7th Dist. Nos. 97 C.A. 146, 97 C.A. 148, 1999 WL 476253 (June 30, 1999). The trial court's findings of fact are given deference if supported by competent, credible evidence. *Id.* However, a reviewing court must independently review whether the trial court properly applied the law to the facts of the case. *Id.* Furthermore, an appellate

court must strictly construe the relevant statutes against the state. *Id.*, citing *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706 (1996).

**{¶13}** The prosecution and the trial court are required to try an accused within the time frame provided by the statute. *State v. Singer*, 50 Ohio St.2d 103, 105, 362 N.E.2d 1216 (1977); see also *State v. Cutcher*, 56 Ohio St.2d 383, 384, 384 N.E.2d 275 (1978). However, the general assembly recognized that some degree of flexibility is necessary, thus extensions of the time limits are given in certain circumstances. *State v. Lee*, 48 Ohio St.2d 208, 209, 357 N.E.2d 1095 (1976). R.C. 2945.72 provides an exhaustive list of events and circumstances that extend the speedy trial limit.

**{¶14}** In accordance with R.C. 2945.72(A)-(I) the speedy trial time frame is extended for any period of time where the defendant: is unavailable for hearing or trial; is mentally or physical incompetent to stand trial; lacks counsel; causes delay by neglect or improper acts; files a motion, proceeding, or other action; seeks removal or change of venue; has his or her trial stayed due to a statutory requirement or order of another court; has his or her own motion for continuance granted and when any period of reasonable continuance is granted other than on defendant's own motion; files an appeal.

**{¶15}** The parties do not dispute that the state had 90 days to bring Appellant to trial pursuant to the triple count provision. The speedy trial clock begins to run the day after a defendant is arrested. *State v. Brown,* 7th Dist. No. 03-MA-32, 2005-Ohio-2939. Appellant was arrested on August 8, 2015. Thus, the speedy trial clock began to run on August 9, 2015.

Case No. 17 CO 0009

**{¶16}** The parties agree that the speedy trial time ran until October 5, 2015 when Appellant filed a motion for discovery. A defendant's discovery request tolls the speedy trial clock. *State v. Helms,* 7th Dist. No. 14 MA 96, 2015-Ohio-1708, ¶ 20, citing *State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, 781 N.E.2d 159, ¶ 26. The parties agree that 58 days of speedy trial time had accumulated to this point.

**{¶17}** While time was tolled on Appellant's motion, on October 26, 2015 the trial court granted a motion to continue made by the state. "An extension initiated by the State's motion does not necessarily run afoul of the speedy trial time limit". *State v. Mitchell,* 7th Dist. No. 06-MA-169, 2008-Ohio-645, ¶ 30, citing *State v. High*, 143 Ohio App.3d 232, 242, 757 N.E.2d 1176 (7th Dist.2001). Pursuant to R.C. 2945.72(H), the time in which a defendant must be brought to trial may be extended for the period of any reasonable continuance requested by the state or imposed *sua sponte* by the trial court. The continuance must be reasonable in both purpose and length. *Mitchell, supra,* citing *State v. Clow*, 7th Dist. No. 01-CA-70, 2002-Ohio-1564, ¶ 10, citing *State v. Martin*, 56 Ohio St.2d 289, 293, 384 N.E.2d 239 (1978).

**{¶18}** Appellant does not appear to dispute the reasonableness of the continuance. Regardless, the trial court's October 26, 2015 judgment entry states that the continuance was granted to allow an additional week for the state to receive reports from BCI. As such, the continuance and the length of time were reasonable. Regardless, the speedy trial time remained tolled because Appellant filed additional discovery requests. The speedy trial time remained tolled at 58 days.

**{¶19}** The trial court scheduled a status conference for November 2, 2015. At the conference hearing, the trial court scheduled trial for December 8, 2015. Although

Appellant argues on appeal that the trial court did not explain how it selected the trial date, it is apparent from the transcripts that the trial court worked with defense counsel's schedule in conjunction with the court's docket. For instance, at the hearing, defense counsel stated that he would be out of town for almost two weeks and had multiple trials scheduled after his return. The judge then stated that the first week of December was unavailable due to the court's docket. Thus, the judge arrived at the December 8, 2015 trial date.

{¶20} On November 24, 2015, the trial court ruled on Appellant's motion for discovery, and the speedy trial clock resumed. At this point, Appellant's trial clock was still at 58 days. On December 7, 2015, the eve of trial, defense counsel filed a motion seeking discharge based on an alleged speedy trial violation, a motion in limine, and a motion for a change of venue. Accordingly, the trial court converted the December 8, 2015 trial date to a status conference for purposes of addressing the motions, and continued Appellant's trial. (12/4/15 J.E.) Motions in limine filed by a defendant automatically toll the running of speedy trial time. *State v. Sanchez,* 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, ¶ 25. Motions for dismissal on speedy trial grounds also automatically toll the running of speedy trial time. *State v. Nottingham,* 7th Dist. No. 05 BE 39, 2007-Ohio-3040. At this point, 71 days had run on Appellant's speedy trial clock.

{¶21} While these motions were pending, on December 23, 2015, Appellant's counsel filed a motion to withdraw. On January 4, 2016, the trial court denied the speedy trial motion, permitted defense counsel to withdraw, and appointed new counsel. The appointment of new counsel due to a conflict with a defendant is a

reasonable basis to continue a trial. *State v. Christian,* 7th Dist. No. 12 MA 164, 2014-Ohio-2590, ¶ 11. After the continuance was granted, the trial court set a status conference for April 25, 2016 and set a trial date for May 3, 2016.

**{¶22}** The following events occurred after the trial date was set. On March 9, 2016, Appellant filed a motion for discharge on speedy trial grounds. On March 14, 2016, Appellant's March 9, 2016 motion for discharge and December 7, 2015 motion in limine were withdrawn by defense counsel. On April 25, 2016, Appellant filed a new motion for discharge and a new motion in limine. The trial court denied these on June 10, 2016. On July 5, 2016, Appellant filed a *pro se* motion to dismiss. The trial court denied his motion on July 27, 2016.

**{¶23}** The parties disagree as to the events that occurred between February 2, 2016 and June 10, 2016. They agree that the speedy trial time tolled on January 4, 2016 when new counsel was appointed. However, Appellant argues that the clock should have resumed running on February 2, 2016 when the status conference was held and new counsel attended. The state argues that the speedy trial time was tolled until May 3, 2016, which was the trial date set as a result of the January 4, 2016 continuance.

**{¶24}** While this matter was pending, we released *State v. Sims,* 7th Dist. No. 16 MA 0084, 2018-Ohio-2916. At oral argument, Appellant conceded that *Sims* resolves this issue in favor of the state. In *Sims*, we addressed whether a delay in resetting a trial date after a continuance is granted tolls speedy trial time until the rescheduled trial date or whether time is tolled for a period of thirty days. Similar to the instant case, in *Sims* the trial court granted defendant's motion for a continuance and scheduled a

pretrial conference but did not immediately set a new trial date. We held that the eight-month span between the trial court's decision to grant a continuance and the rescheduled trial date was properly tolled because the continuance was reasonable and the parties agreed on the new trial date. *Id.* at ¶ 31-34.

**{¶25}** Here, the parties agree that the speedy trial time tolled on January 4, 2016 when the trial court permitted defense counsel to withdraw. In accordance with *Sims,* the clock remained tolled until May 3, 2016 (the next scheduled trial date), because the continuance was reasonable and the record clearly demonstrates that Appellant's counsel, the prosecutor, and the trial court judge agreed at a status conference that May 3, 2016 was acceptable as a new trial date. (See 8/4/17 Transcript of Proceedings, p. 31.)

**{¶26}** The next issue is also resolved by *Sims.* Appellant contends that when the trial court denied his April 25, 2016 motions for discovery and in limine the speedy trial clock resumed running. Appellant argues these motions were denied on May 17, 2016. However, this record reflects that on April 25, 2016, the trial court continued the trial to allow the parties to brief the motions filed by Appellant and that these were denied June 10, 2016. On June 6, the court held a hearing and stated for the record: "I believe we have agreed on some dates for future proceedings." (8/4/17 Transcript of Proceedings, p. 37.) At that time, Appellant's counsel and the state agreed that September 13, 2016 was an acceptable trial date. After the hearing, Appellant had filed his *pro se* motion to dismiss, on July 5, 2016. Pursuant to *Sims*, the speedy trial time remained tolled until the new trial date, September 13, 2016, due to the reasonable continuance granted because of Appellant's April 25 and July 5, 2016 motions.

Case No. 17 CO 0009

**{¶27}** The final issue raised by Appellant is also resolved by *Sims.* On September 12, 2016, the eve of trial, Appellant's counsel again filed various motions, including one seeking to withdraw as counsel. The trial court held a status conference and the state expressed its concern that Appellant had requested new counsel on the brink of trial several times during the proceedings and had filed several motions to dismiss due to alleged speedy trial violations. The court acknowledged that there were legitimate concerns regarding Appellant's gamesmanship, but continued the trial because it was apparent Appellant's newly appointed counsel could not adequately prepare for trial in one day. On September 16, 2016, the trial court held a hearing and set a new trial date of December 13, 2016. The record demonstrates that Appellant's newest counsel could not appear for trial in September or October and the trial court had limited availability in November. It is clear from this record that counsel and the trial court worked together to obtain the earliest, satisfactory trial date. Thus, pursuant to *Sims*, the speedy trial time remained tolled until the trial date of December 13, 2016. Trial did commence on December 13, 2016. On this date, only 71 days of speedy trial time had accumulated.

**{¶28}** As Appellant was tried within 90 days after his arrest when legitimate tolling events are considered, his first assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 2

APPELLANT WAS DENIED THE EFFECTIVE REPRESENTATION OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATE [SIC] CONSTITUTION.

**{¶29}** Appellant makes three ineffective assistance of counsel arguments. First, he contends that he received ineffective assistance when his counsel failed to call the victim as a witness despite the fact that the victim provided a notarized letter stating that Appellant was not the shooter. Second, Appellant argues that his counsel was ineffective for failing to object when several witnesses testified that he was a drug dealer. Third, Appellant argues that his counsel was ineffective for failing to object to Det. Talbert's reference to a prior arrest.

**{¶30}** In response, the state argues that defense counsel's failure to call the victim as an admittedly reluctant witness was trial strategy. The state explains that the victim's original statements to police clearly identified Appellant as the shooter. Even if the victim provided trial testimony favorable to Appellant, defense counsel would have been forced to address the inconsistency between such testimony and the unequivocal statements made by the victim immediately after the shooting. The state also argues that the defense had ample time to discuss potential testimony with the victim and there is nothing to suggest that counsel did not do so. As to the references to Appellant's status as drug dealer, the state argues that the limited references were relevant to the police officer's efforts in locating Appellant. Regardless, the state contends that Appellant has not demonstrated prejudice.

**{¶31}** To successfully assert a claim of ineffective assistance of counsel, an appellant must not only demonstrate that counsel's performance was deficient, he must also show resulting prejudice. *State v. White*, 7th Dist. No. 13 JE 33, 2014-Ohio-4153, ¶ 18, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶ 107.

Case No. 17 CO 0009

**{¶32}** Deficient performance occurs when counsel's performance falls below an objective standard of reasonable representation. *State v. Ludt*, 7th Dist. No. 09 MA 107, 2009-Ohio-2214, ¶ 3, citing *Strickland*, *supra*. In other words, there must be "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Lyons v. Schandel*, 7th Dist. No. 14 CA 898, 2015-Ohio-3960, ¶ 13, citing *Strickland*, *supra*. "A decision whether or not to call certain witnesses at trial is a strategic or tactical decision." *State v. Jones,* 7th Dist. No. 03 MA 261, 2005-Ohio-6930, ¶ 45, citing *State v. Pimental*, 8th Dist. No. 84034, 2005-Ohio-384, ¶ 17.

<u>Failure to call the victim</u>

**{¶33}** Appellant presented a notarized letter from the victim stating that Appellant was not the shooter. (7/5/16 Motion to Dismiss.) However, the victim stated in the letter that he would not testify and did not want to be involved with the case. The letter stated "[t]his is my last time saying it I'm done with this case, So don't come or ask me to get on know stand about it [sic]." (7/5/16 Motion to Dismiss.) This is consistent with testimony from Appellant's ex-girlfriend's that the victim did not want to further implicate Appellant for fear of being labelled a "snitch" in the streets.

**{¶34}** The record contains testimony from Det. Talbert that the victim told officers at the scene Appellant was the shooter. (12/14/16 Tr. Vol. I, p. 329.) This statement was apparently videotaped by body cameras. The ex-girlfriend also testified that Appellant was the shooter. Aside from the sleeping children, there is no evidence that anyone other than Appellant's ex-girlfriend, the victim, and Appellant were in the vicinity of the apartment at the time the shots were fired. Appellant admitted he was present in the apartment that night.

<u>Case No. 17 CO 0009</u>

**{¶35}** It is speculative whether the victim's testimony would have been consistent with his statements the night of the shooting or whether they would have been consistent with his letter. It is also uncertain what effect the victim's possible recantation would have on a jury when considering his more timely statement to police and the testimony of Appellant's ex-girlfriend. Also, there is no evidence that defense counsel failed to speak to the victim about which version of events he would relate at trial. We note that defense counsel did mention that the victim did not testify during closing arguments and used that fact in an attempt to discredit the state's claims.

Drug Dealer/Prior Arrest References

**{¶36}** The Ohio Supreme Court has held that "the introduction of evidence tending to show that a defendant has committed another crime wholly independent of the offense for which he is on trial is prohibited." *State v. Breedlove*, 26 Ohio St.2d 178, 183, 271 N.E.2d 238 (1971), citing *State v. Hector*, 19 Ohio St.2d 167, 249 N.E.2d 912 (1969), paragraph one of the syllabus. However, the Court has also recognized that an exception to this principle exists "where the prior offense, if shown to be part of a common plan or scheme and evidence thereof, is admitted to prove the elements of intent, motive, knowledge or identity." *Breedlove* at 183.

**{¶37}** Here, the references to Appellant's status as a drug dealer were relevant to identify and to the officers' efforts in locating Appellant. Appellant had not given his ex-girlfriend his real name, however, she helped Det. Talbert locate Appellant by use of his street name, "Boog-E." Det. Talbert testified that she told him that "Boog-E" had been arrested in Goshen Township in 2014. This disclosure helped him determine that

Appellant was the same "Boog-E" with whom he was already familiar. Det. Talbert did not provide any additional information about Appellant's prior arrest.

{¶38} Another witness, Mark Cassinger, testified that he also assisted police in locating Appellant. Cassinger testified that he knew Appellant from the "drug world" by Appellant's street name, "Boog-E." In an effort to assist police, Cassinger telephoned Appellant while the police were present. Appellant informed him that he was hiding from police and intended to change his street name from "Boog-E" to "Peso." Witness Ryan Stanley provided similar testimony. Stanley's testimony was relevant to demonstrate his knowledge that Appellant carried a gun.

{¶39} Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and will not constitute grounds for reversal. *State v. Howard-Ross,* 7th Dist. No. 13 MA 168, 2015-Ohio-4810, 44 N.E.3d 304, citing *State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976), paragraph three of the syllabus, vacated on other grounds in 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154 (1978).

{¶40} Even if the references could be said to amount to improper character evidence, there was overwhelming evidence of Appellant's guilt. As discussed above, the victim identified Appellant as the shooter to police immediately following the incident. Appellant's ex-girlfriend also identified Appellant as the shooter. Appellant admitted he was in the apartment at the time of the incident. There was evidence that Appellant attempted to hide from police after the shooting and changed his street name in an effort to avoid law enforcement. Importantly, one witness testified that Appellant asked him to pick up a gun and some bullets left at an apartment complex which

happens to be the same complex where the shooting took place. (12/14/16 Tr. Vol. II, p. 502.)

**{¶41}** Accordingly, counsel's performance does not appear deficient and the record reveals that Appellant suffered no prejudice, regardless. Appellant's second assignment of error is without merit and is overruled.

<u>ASSIGNMENT OF ERROR NO. 3</u>

THE TRIAL COURT ERRED IN NOT MERGING THE SENTENCES FOR EACH OF APPELLANT'S CONVICTIONS FOR FELONIOUS ASSAULT AND DISCHARGING A FIREARM INTO A HABITATION AND/OR IN SENTENCING ON BOTH COUNTS AS BOTH ARE ALLIED OFFENSES.

**{¶42}** Appellant argues that his convictions for felonious assault and firing a weapon into a habitation should have merged for sentencing purposes. He contends that there was only one victim of both offenses. Appellant argues that the action on which both are based was "a single burst of fire." (Appellant's Brf., p. 12.) As such, he maintains that the offenses are allied and should have merged for purposes of sentencing.

**{¶43}** In response, the state argues that Appellant fired multiple shots into the apartment. In addition to the victim who was hit by gunfire, the state points out that there were three other victims of Appellant's conduct: his ex-girlfriend and the two sleeping children.

**{¶44}** As merger of allied offenses presents a question of law, an appellate court must conduct a *de novo* review. *State v. Burns*, 7th Dist. No. 09-MA-193, 2012-Ohio-2698, ¶ 60. When determining whether offenses are allied, the Ohio Supreme Court

created a fact-specific analysis that looks at the defendant's conduct, the animus, and the import. *State v. Williams*, 7th Dist. No. 13 MA 125, 2015-Ohio-4100, 43 N.E.3d 797, ¶ 17, citing *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 26. The analysis is three-part: (1) whether the offenses are dissimilar in import or significance: that is, whether each offense caused a separate and identifiable harm; (2) whether the offenses were separately committed; and, (3) whether the offenses were committed with separate animus or motivation. *Id.* If the answer to any of these questions is "yes," then the offenses do not merge. *Id.* The *Ruff* Court acknowledged that, due to the fact-specific nature of the test, results will vary on a case-by-case basis. *Id.*

{¶45} We previously have addressed this issue in *State v. Howard-Ross, supra*. In *Howard-Ross*, the appellant was charged with felonious assault and improper discharge. The indictment did not specify the victims of the improper discharge count, however, the trial court specifically found that there were multiple victims because multiple individuals were in the house at the time the shots were fired. We explained that "[w]hen a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts." *Id.* at ¶ 15, quoting *Ruff* at ¶ 26. Appellant argues that in this case the indictment did not mention multiple victims. However, the evidence produced at trial clearly demonstrated that there were four victims: Appellant's ex-girlfriend, her new male friend who suffered gunshot wounds, and the two children. While only one of these was struck by the gunfire, all of these persons were clearly at risk by Appellant's conduct of shooting into a habitation. As multiple victims are involved, the trial court properly refused to merge Appellant's offenses.

**{¶46}** Accordingly, Appellant's third assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 4

APPELLANT'S SENTENCE IS CONTRARY TO LAW AS THE TRIAL COURT FAILED TO MAKE ANY OF THE FINDINGS REQUIRED BY R.C. 2929.14(C)(4) PRIOR TO IMPOSING CONSECUTIVE SENTENCES.

**{¶47}** Appellant argues that the trial court failed to include any mention of the R.C. 2929.14(C) consecutive sentencing factors within the sentencing entry. Due to this, he believes his sentence is contrary to law. In response, the state argues that the trial court adequately made the findings.

**{¶48}** An appellate court is permitted to review a felony sentence to determine if it is contrary to law. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 23. Pursuant to *Marcum*, "an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence." *Id.*

**{¶49}** According to R.C. 2929.14(C)(4), before a trial court can impose consecutive sentences, the court must find:

> [T]hat the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶50}** A trial court judge must make consecutive sentence findings at the sentencing hearing and must additionally incorporate the findings into the sentencing entry. *Williams*, *supra*, 2015-Ohio-4100, 43 N.E.3d 797, 806, ¶ 33–34, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. A court need not state reasons to support its finding, nor is it required to use any "magic" or "talismanic" words, so long as it is apparent from the record that the court conducted the proper analysis. *Id.*, citing *State v. Jones*, 7th Dist. No. 13 MA 101, 2014-Ohio-2248, ¶ 6; *State v. Verity*, 7th Dist. No. 12 MA 139, 2013-Ohio-1158, ¶ 28-29.

**{¶51}** At the sentencing hearing, the court stated:

And I'm going to make the findings here that in this case, the consecutive terms are not disproportionate to the serious nature of the criminal

conduct involved, and, because of your past record, which includes at least one felony conviction and other problems with the law, these consecutive terms are necessary here to protect the public and carry out the purpose and principles of the Ohio Felony Sentencing Law.

(12/22/16 Sentencing Tr., pp. 25-26.)

{¶52} However, in its sentencing entry, the trial court stated: "The Court finds that consecutive sentences are necessary to protect the public and punish the offender and are not disproportional to the criminal conduct involved and the chronology of these offenses." (12/23/16 Sentencing Entry.) We can discern that the trial court correctly imposed consecutive sentences at the sentencing hearing. The trial court's sentencing entry, however, fails to include some of the court's stated findings. This omission reflects a clerical mistake that can be corrected by a *nunc pro tunc* entry. See *Bonnell, supra,* at ¶ 30.

{¶53} As such, Appellant's fourth assignment of error has partial merit and is sustained in part only to allow the trial court to correct the clerical error in its sentencing entry.

Conclusion

{¶54} Appellant presents speedy trial, ineffective assistance of counsel, merger, and consecutive sentencing arguments. Appellant's speedy trial, ineffective assistance of counsel, and merger arguments are without merit. However, while the trial court made appropriate consecutive sentencing findings at the sentencing hearing, the court failed to properly incorporate R.C. 2929.14(C) findings within its sentencing entry. Accordingly, Appellant's convictions are affirmed. Appellant's sentence is affirmed in

part and remanded in part to obtain a *nunc pro tunc* entry correctly incorporating Appellant's consecutive sentence into the entry.

Donofrio, J., concurs.

Robb, P.J., concurs.

---

For the reasons stated in the Opinion rendered herein, Appellant's first, second and third assignments of error are overruled and his fourth assignment is sustained in part. It is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed in part. However, because the record reveals the trial court failed to properly incorporate its R.C. 2929.14(C)(4) findings into its sentencing entry when it sentenced Appellant to consecutive prison terms, this matter is reversed in part and hereby remanded to the trial court for the limited purpose of entering a *nunc pro tunc* entry addressing the consecutive sentencing findings made at the sentencing hearing according to law and consistent with this Court's Opinion. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**