DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Gary Davis ("Davis"), appeals from the decision of the Medina County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On November 8, 2006, two deputies from the Medina County Sheriffs Department, while on routine patrol, observed Davis drive into a motel parking lot and enter the motel. The deputies saw Davis exit the motel as they approached it. As he passed them, the deputies smelled alcohol. The deputies also noted that Davis' eyes were glassy and his complexion was red. Believing him to be intoxicated, the deputies followed Davis as he drove to a nearby truck *Page 2 
stop. Davis entered the truck stop and, after some time had passed, the deputies followed. The deputies observed Davis inside, talking on a cell phone. The deputies approached and asked Davis for his name and identification. Davis provided them with a friend's name and social security number. The deputies asked Davis to go with them to the police cruiser so that they could further investigate the matter. The deputies allege that after exiting the truck stop, Davis began to throw closed fist punches at one of them. Davis denies this claim. After a struggle, Davis attempted to flee from the deputies. Davis ignored their commands, and the deputies used a taser to thwart his escape. According to the deputies, Davis continued to ignore their commands. Eventually, the deputies were able to subdue Davis and place him under arrest. Due to the injuries Davis received during the confrontation, the deputies contacted an EMS squad. Davis was transported to Lodi Community Hospital where he was eventually transferred to Akron General Hospital. He was monitored at Akron General Hospital for six days, and then transferred to the Medina County Jail.
 {¶ 3} On November 29, 2006, Davis was indicted on one count of assaulting a peace officer, in violation of R.C 2903.13(A)(3). Davis pled not guilty to the charge. On January 31, 2007, Davis filed a motion to dismiss the indictment and the petit jury venire. On February 5, 2007, the trial court held a hearing and Davis made a written proffer of evidence in support of his motion. The trial court did not rule on this motion. On February 26 through February 28, a *Page 3 
jury trial was held. At the end of the trial, the jury found Davis guilty of assaulting a peace officer. On March 12, 2007, Davis was sentenced to 12 months incarceration. Davis timely appealed, raising three assignments of error for our review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO DISMISS THE INDICTMENT FOR WHOLESALE VIOLATION OF THE JURY CODE."
 ASSIGNMENT OF ERROR II "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO DISMISS THE PETIT JURY CALLED TO TRY [DAVIS] FOR WHOLESALE VIOLATION OF THE JURY CODE."
 {¶ 4} In his first and second assignments of error, Davis argues that the trial court committed prejudicial error by failing to dismiss the indictment for wholesale violation of the jury code and for failing to dismiss the petit jury for the wholesale violation of the jury code. We do not agree.
 {¶ 5} We first note that despite the internal inconsistencies in his brief, Davis was afforded a hearing on his motion to dismiss. A short hearing was held on February 5, 2007. Further, we note that the trial court did not rule on this motion. "In general, if the trial court fails to mention or rule on a pending motion, the appellate court presumes that the motion was implicitly overruled." Lorence v. Goeller, 9th Dist. No. 04CA008556, 2005-Ohio-2678, at ¶ 47, citing Fed. Home *Page 4 Loan Mtge. Corp. v. Owca (Nov. 17, 1999), 9th Dist. No. 2897-M, at *2. We presume by the trial court's silence that Davis' motion to dismiss was overruled.
 {¶ 6} We recently considered the same challenge to the jury venire inState v. Dunning, 9th Dist. No. 06CA0087-M, 2007-Ohio-7039. InDunning we followed the reasoning of the Ohio Supreme Court in State v.Fulton (1991), 57 Ohio St.3d 120. In that case, the Court explained that
 "the failure to follow the procedure set forth in R.C. 2313.01 et seq. for the selection of grand jury venires does not ipso facto reverse an otherwise valid conviction of a defendant. If the actual grand jurors that are impaneled possess the requisite qualifications to be grand jurors, then any irregularities will be viewed as non-prejudicial unless the defendant can make a showing that he was prejudiced by the selection process." Fulton, 57 Ohio St.3d at 124, citing State v. Puente (1982), 69 Ohio St.2d 136, 138.
 {¶ 7} Much like the appellant in Dunning Davis has not alleged that the grand jury members were not qualified to be grand jurors, but only that the procedures set forth in R.C. 2313.01, et seq. were not adequately followed. As in Dunning, Davis
 "cites State v. Gunther (Jan. 2, 1998), 125 Ohio App.3d 226, for the proposition that the trial court's dismissal of his motion was unreasonable. However, in that case, the State conceded that procedures under the jury code had been violated. Therefore, the Gunther court had evidence before it to find that the trial court should have held an evidentiary hearing to determine if the appellant was prejudiced by the violation. There are no such concessions before this Court." Dunning, supra, at ¶ 10.
 {¶ 8} We also noted in Dunning that "R.C. 2313.41, relating to challenging an array of grand or petit jurors, states that no indictment shall be *Page 5 
quashed or verdict set aside for any such irregularity * * * if the jurors who formed the same possessed the requisite qualifications to act as jurors." (Internal citations omitted.) Id. at ¶ 11 "Even if the record were to support [Davis'] arguments regarding the violation of the jury code, our independent review does not support, nor does [Davis] argue, that he was prejudiced by the selection process." Id., citingFulton, 57 Ohio St.3d at 124; Puente, 69 Ohio St.2d at 138.
 {¶ 9} Accordingly, Davis' first and second assignments of error are overruled.
 ASSIGNMENT OF ERROR III "THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE JURY'S GUILTY VERDICT, AND [DAVIS'] CONVICTION OF ASSAULTING A PEACE OFFICER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 10} In his third assignment of error, Davis contends that his conviction was not supported by sufficient evidence and that it was against the manifest weight of the evidence. We do not agree.
 {¶ 11} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390. Further,
 "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination *Page 6 
that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
 {¶ 12} Therefore, we will address Davis' claims that his convictions were against the manifest weight of the evidence first, as they are dispositive of his claims of insufficiency.
 {¶ 13} When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 14} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 15} In the instant case, Davis was convicted of assaulting a peace officer, in violation of R.C. 2903.13 which states in pertinent part:
 "(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn.
 "* * *
 "(3) If the victim of the offense is a peace officer or an investigator of the bureau of criminal identification and investigation, a firefighter, or a person performing emergency medical service, while in the performance of their official duties, assault is a felony of the fourth degree." *Page 7 
 {¶ 16} Davis first argues that the State failed to establish jurisdiction and venue. Specifically, he contends that because the State did not present evidence that the alleged assault occurred in the state of Ohio, it failed to establish the essential elements of the crime. In response, the State agrees with Davis in that "[i]t appears from the record that the trial prosecutor did not specifically ask Deputy Demko or Deputy Schismenos in which state Davis assaulted them."
 {¶ 17} "Although it is not a material element of the offense charged, venue is a fact which must be proved in criminal prosecutions unless it is waived by the defendant." State v. Headley (1983), 6 Ohio St.3d 475,477, citing State v. Draggo (1981), 65 Ohio St.2d 88, 90. However, we have explained that venue does not need to be proven in express terms as long as it is established beyond a reasonable doubt by the facts and circumstances in the case. State v. Yarbour, 9th Dist. No. 04CA0008-M,2004-Ohio-5444, at ¶ 24.
 {¶ 18} In Yarbour we found that the evidence in that case showed that the events took place at the Medina County Fair. We found this evidence clearly indicated that the events took place in Medina County.Yarbour, supra, at ¶ 26. "While it would have been better practice for the State to have established venue in express terms at trial, and while we do not encourage this lax method of establishing venue in this case, it clearly appears from the evidence presented that the events in question occurred within Medina County." Id. at ¶ 28. We explained that "`[t]he venue need not be proved in express terms, where the evidence is such *Page 8 
in the state's case, that no other inference can be reasonably drawn by the jury.'" Id. at ¶ 27, quoting State v. Dickerson (1907),77 Ohio St. 34, 56. Finally, we concluded that because the jury was comprised of Medina County residents, who knew that the Medina County Fair took place in Medina County, the testimony properly established venue.
 {¶ 19} The evidence in this case clearly indicates that the incident took place in Medina County, Ohio. Our review of the record shows no specific mention of Ohio. However, the State's witnesses specifically testified that the assault took place in Westfield Township, in the area of Lake and Route 224, in Medina County. The deputies both testified that they were employed by the Medina County Sheriff's Department. Further, the witnesses referred to Lodi Community Hospital and Akron General Hospital, both located in the state of Ohio. From this testimony, we find it clear that the incident took place in Medina County, Ohio, and that the jury could draw no other reasonable inference.
 {¶ 20} Next, we turn to Davis' argument regarding whether he knowingly attempted to cause physical harm to Deputy Schismenos.
 {¶ 21} At trial, the State presented the testimony of Deputy Schismenos and Deputy Demko. Davis presented the testimony of Melissa Walter, a nurse at the Lodi Community Hospital, and Sergeant Kiousis. Davis also testified.
 {¶ 22} Deputy Demko and Deputy Schismenos both testified that on November 8, 2006, they were on routine patrol. They stated that they were *Page 9 
checking on the desk clerk at the Super 8 Motel. The deputies observed Davis pull up behind them in a large vehicle and then exit the vehicle. The deputies followed him. According to Deputy Demko, the deputies could see through the glass doors that Davis was "very unorganized, not stable on his feet, waving his hands and talking out loud." Davis exited the building and walked past the deputies. As he passed, the deputies testified that they could smell alcohol on Davis' breath and body. The desk clerk informed the deputies that Davis was very drunk and that he told her that he was going to a truck stop to meet some friends. Davis got into his vehicle and drove off. The deputies drove to the truck stop and observed Davis' empty vehicle at a gas pump. While Deputy Demko entered the restaurant located at the truck stop, Deputy Schismenos walked into the gas station entrance. According to Deputy Demko, restaurant employees informed him that Davis was bothering customers and asking people for rides. The deputies observed Davis pacing in front of a window. When the deputies approached Davis he was using a borrowed cell phone. Both deputies identified Davis in court.
 {¶ 23} The deputies testified that when asked to come outside, Davis immediately informed them that he was not drinking and was not driving. The deputies testified that they knew that this was false. Davis also denied being at the Super 8 Motel, which the deputies also knew was false. Davis informed the deputies that he did not have a license and gave them another individual's name and social security number. The deputies informed Davis that they were going to *Page 10 
go to the police cruiser to further investigate the matter and requested that Davis accompany them. Davis agreed. As all three men walked outside, Deputy Demko testified that he informed Deputy Schismenos that he recognized Davis, although he could not remember his name. He did, however, know that the name Davis gave them was not correct.
 {¶ 24} As the deputies were escorting Davis outside, Deputy Schismenos guided Davis by placing his hand on Davis' elbow. Deputy Demko followed behind. Deputy Demko testified that when they got outside, Davis started "swinging at Deputy Schismenos and had a closed fist." According to Deputy Demko, Davis was swinging at Deputy Schismenos' head. As Davis and Deputy Schismenos struggled, they fell backwards toward Deputy Demko. According to Schismenos, "[t]he look on his face, he had a very angry face. He kept swinging at us, and at that point in time, I was leaning back as to not get punched[.]" Both deputies testified that had they not backed up from Davis' punches, they would have been punched in the face. Deputy Schismenos testified that he had no doubt that Davis' intent was to cause them harm. After the struggle, Davis ran from the deputies.
 {¶ 25} The deputies chased Davis and gave him several commands to stop. When he did not respond to their demands, Deputy Demko used his taser to hit Davis in the center of his back. Deputy Schismenos testified that he saw Davis "lurch up and fall, smacking hard on the ground." Davis attempted to get up again *Page 11 
and Deputy Demko tased him again. The deputies were then able to handcuff Davis. After he was handcuffed, Davis made threats to the deputies. According to Deputy Demko, as a result of the encounter, Davis had a "little scrape on the elbow and a small cut on his head area, around his temple." The deputies requested an emergency medical squad to treat the bleeding and the scrapes. According to Deputy Schismenos, Davis' behavior towards the EMS personnel was "[v]ery unacceptable. * * * [H]e was very argumentative, disruptive, calling them names and us names and trying to get us to fight him." Deputy Schismenos testified that he had to handcuff Davis to the stretcher and place an officer in the ambulance to ensure the medical personnel's safety. Davis was transported to the Lodi Community Hospital. Deputy Schismenos testified that upon arrival, Davis was still argumentative, disruptive and belligerent with hospital staff.
 {¶ 26} Davis presented testimony from Melissa Walter ("Walter"), a registered nurse at Lodi Community Hospital. Walter testified that she was working in the emergency room on November 8, 2006. She stated that Davis had a contusion on the right side of his head and abrasions on his head and right shoulder. She further testified that Davis had bruising with swelling over his temporal lobe and abrasions on his face. Walter stated that because Davis had blood clots in his urine, she checked his back to determine if there were any signs of renal trauma. She indicated that she discovered redness on the sides and lower portions of his back. Walter explained that this indicated renal trauma. To rule *Page 12 
out any damage to his kidneys, Davis was transferred to Akron General Hospital. Walter stated that Davis' blood tested positive for both cocaine and alcohol. On cross examination, Walter indicated that upon arrival she did not consider any of Davis' injuries serious and that he was not cooperative. When asked if she was concerned that something physical was going to take place between Davis and the deputies, Walter testified that "he was so irate when he got there, I was afraid that he was going to — there was a possibility that he would get out of bed and want to."
 {¶ 27} Sergeant James Kiousis testified for the defense. He stated that he observed Davis at Lodi Community Hospital until he was transferred to Akron General Hospital. He testified that he rode with Davis in the ambulance to Akron General Hospital. He stated that Davis did not give him any trouble during that time.
 {¶ 28} Davis testified that he was at the Super 8 Motel looking for a hotel room. After finding out that the motel was full, he went to the Pilot station. He testified that he saw the police vehicle at the motel and expected that it would follow him to the Pilot station. He testified that when the deputies approached him in the restaurant he "got scared" and gave them the name and social security number of a friend. Davis testified that, upon request, he went outside with the deputies. He explained that as they approached the police car, he got even more scared that he was going to get a DUI, so he "turned really fast and went around *Page 13 
Schismenos and ran towards the pumps." Davis admitted that he lied to the deputies three times during their conversation and that he has been previously convicted of forgery and larceny. He explained that as he was running away he felt a shock and "the next thing that I know, everything opened up and I smacked face first to the ground. I smacked the concrete as hard as I possibly could." He further stated that while still feeling the effects of the first taser shock, he was tased again, and then "someone lands on my back. And the next thing I know, I am sitting in the back of the cop car bleeding." Davis testified that he felt something like a kick, punch, or knee come down on his right side. He also indicated that a knee came down on his back as the deputies started to handcuff him.
 {¶ 29} Davis denied attempting to attack the deputies. He stated that even though he had had eight beers he would never attack the deputies because it would be "a losing battle." Davis testified that he was "beaten up." He explained that he was in the surgical intensive care unit at Akron General Hospital for six days, where he slept for 37 hours straight. He stated that he had a fractured vertebra in his back.
 {¶ 30} On cross-examination, Davis admitted to a conviction for breaking and entering in another state. He also explained that he pled guilty to, and was convicted of, aggravated menacing in Noble County, Ohio. Although he pled guilty, he explained that it was a "setup." Davis admitted that he had previously *Page 14 
spent 24 months in jail on a DUI conviction. He further admitted that he was on probation in Cuyahoga County for felony theft. Davis admitted that he had done cocaine two nights prior to the incident.
 {¶ 31} Under R.C. 2901.22(B), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." It is clear from the deputies' testimony that Davis knowingly attempted to punch them when he attacked them in an attempt to get away. Further, Davis' own witness testified that he was belligerent and uncooperative when he arrived at the hospital and that she feared he would get out of the hospital bed and start a physical confrontation. Walter testified that Davis tested positive for alcohol and cocaine. Davis' testimony regarding his lengthy list of crimes of dishonesty demonstrates that his credibility is at issue.
 {¶ 32} After reviewing the record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we cannot conclude that the trial court created a manifest miscarriage of justice in finding Davis guilty of assaulting a peace officer. As we have disposed of Davis' challenge to the weight of the evidence, we similarly dispose of his challenge to the sufficiency. Roberts, supra, at *5. Accordingly, Davis' third assignment of error is overruled.
 III. *Page 15 {¶ 33} Davis' assignments of error are overruled and the judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed to Appellant. *Page 16 
 CARR, P. J. WHITMORE, P. J. CONCUR. *Page 1