**[Cite as *State v. Lewis*, 2021-Ohio-1895.]**

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28962 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-2644/1 |
| | : | |
| MICHAEL LEWIS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 4th day of June, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

J. DAVID TURNER, Atty. Reg. No. 0017456, 101 Southmoor Circle NW, Kettering, Ohio 45429
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant Michael Lewis appeals from his convictions for unlawful sexual conduct with a minor, sexual imposition, public indecency, soliciting, and disseminating matter harmful to juveniles (obscene).[1]  In his sole assignment of error, Michael contends that his speedy trial rights were violated.   After reviewing the record, we find that no violations occurred.   Accordingly, the judgment of the trial court will be affirmed.

## I.   Facts and Course of Proceedings

{¶ 2} On August 16, 2019, an indictment was filed in the trial court, charging Michael and his wife, Amy, with a total of 24 crimes that occurred in connection with A.R., a minor child who was related to Michael.   The first 15 counts involved Michael, who was alleged to have committed unlawful sexual conduct with a minor (seven counts), gross sexual imposition (six counts), soliciting (one count), and public indecency (one count). Indictment A, p. 1-6.   Amy was alleged to have committed unlawful sexual conduct with a minor (nine counts).   *Id.* at p. 6-10.   The acts in question were alleged to have occurred between May 2, 2014, and May 1, 2017, when A.R. was over the age of 13, but was less than 16 years old.   The charges against Michael included eight third-degree felonies, six third-degree misdemeanors, and one second-degree misdemeanor.

{¶ 3} Previously, in March 2018, Dayton Police Detective Elizabeth Alley learned of allegations that A.R. made against Amy and Michael, with whom he had lived for some

---

[1] To avoid confusion, we will refer to Michael Lewis and his wife, Amy Lewis, by their first names, as they were both convicted on charges relating to sexual abuse of the same minor.   Michael was also charged in a "B" indictment with a sexual offense pertaining to a second minor, M.A.

period of time. Transcript of Proceedings (Motion Hearings) ("Tr. 1"), p. 6. Alley was a detective in the Special Victim's Unit and investigated crimes against children, specifically physical abuse and sex abuse. *Id.* at p. 5. When A.R. made the abuse allegations, he was confined in the Juvenile Detention Center because he had allegedly stabbed Michael. *Id.* at p. 29.

{¶ 4} On August 7, 2019, both Amy and Michael came to the Dayton Safety Building for interviews. *Id.* at p. 7. During her interview, Amy waived her *Miranda* rights and confessed to having had sexual relations with A.R. *Id.* at p. 10-11 and 22. Michael invoked his right to counsel and did not make a confession. *Id.* at p. 4-5. As indicated, an indictment was filed shortly thereafter, charging both Amy and Michael with having committed various sexual crimes. The cases were originally joined, but a motion to sever was later granted on February 26, 2020.

{¶ 5} During the proceedings, Michael was primarily confined at home on electronic detention, except for eight days when he was in jail, and about three months when he was free on his own conditional recognizance before the State filed the B indictment. After the B indictment was filed, the court returned Michael to electronic home detention. *See* Motion for Reconsideration of Bail (Aug. 21, 2019), p.1; Entry Setting Bond (Aug. 26, 2019); Entry Setting Bond at COR/PTS (July 20, 2020); Entry and Order (Oct. 6, 2020).

{¶ 6} On August 27, 2019, Michael was arraigned and pled not guilty. The court set a status hearing for September 3, 2019 and a scheduling conference for September 10, 2019. Transcript of Proceedings (Arraignment, Scheduling Conferences, Final Pretrial Motions Hearing, Arraignment on B Indictment, Conference in Chambers, Plea,

Sentencing) ("Tr. 2"), p. 4.

{¶ 7} During the September 10 scheduling conference, the State indicated that Michael's co-defendant, Amy, had filed a motion for a competency evaluation. The State further said that in order to track the cases together for speedy trial time, Michael would be filing a motion for a continuance to toll time until the evaluation report came back. Michael's attorney agreed that he would file a motion to continue the case and toll the time until the evaluation was completed. Tr. 2, p. 6. The court then referred Amy for a competency evaluation and continued the matter until October 22, 2019. *Id.* at p. 6-7. Michael also filed the motion for continuance, which was granted from September 10, 2019, to October 22, 2019. *See* Order (Sep. 10, 2019).

{¶ 8} On October 29, 2019, the parties again appeared in court. At that time, the State indicated that in addition to filing a motion to suppress, Amy would be filing a motion for a second competency opinion, and that Michael would again file for a continuance so the cases would continue to track together. Tr. 2, p. 8. Michael's attorney stated that this was correct. *Id.* at p. 9. As a result, the court said it would continue the case until November 17, 2019, and would schedule a suppression hearing for January 15, 2020. *Id.* On October 29, 2019, the court filed an order setting a scheduling conference for December 17, 2019, and a suppression hearing for January 15, 2020.[2]

{¶ 9} On January 7, 2020, both Amy and Michael, their attorneys, and the State again appeared together in court. At that time, Amy stipulated to the competency and

---

[2] A discrepancy exists between the November 17, 2019 date mentioned in the transcript and the December 17, 2019 date used in the scheduling order. However, the record does not indicate that the parties appeared on either date. Instead, the next hearing was held on January 7, 2020. Michael also did not file a written motion for a continuance after the October 29 hearing.

not guilty by reason of insanity (NGRI) evaluations, and the court found she was competent to stand trial and did not meet the NGRI legal requirements. Tr. 2, p. 10-11. During the hearing, the prosecutor mentioned that a suppression hearing was set in Amy's case for January 15, 2020, and that her understanding was that Michael's case "will be tracked with that." *Id.* at p. 10. The following exchange then occurred:

THE COURT: * * * We will order the matter set for a hearing on * * * Defendant [Amy] Lewis' motion to suppress. Have we mentioned that –

THE BAILIFF: Yes, Judge. It's January 15th at 10 a.m.

THE COURT: We'll continue that and –

MR. ABBOUD: We're tracking that case, as well, for Mr. Lewis, Your Honor. And I think we'll be here on the 15th, as well.

THE COURT: You will be here on the 15th?

Mr. ABBOUD: Yes, sir.

THE COURT: So we'll continue this. We'll set Mr. Lewis' matter for the 15th as well.

MR. ABBOUD: Thank you, Judge.

Tr. 2, p. 10-11.

{¶ 10} No written order was filed after this hearing, but the parties had already been notified that the suppression hearing would be held on January 15, 2020. On that day, Michael and his attorney appeared at the hearing. During the hearing, Michael's counsel noted that Michael had invoked his right to counsel when he appeared for the police interview. Tr. 1, p. 4-5. In addition, Michael's attorney asked to question the detective who had interviewed Amy, because "statements were made that could also

incriminate" Michael. *Id.* at p. 24. The court denied this request, because the proceeding was not on the merits of the case but only concerned whether Amy was afforded constitutional rights. The court therefore concluded that Michael lacked standing. *Id.* at p. 15. At the end of the hearing, the court gave Amy and the State additional time to file memoranda, and ordered both parties to appear for a decision and scheduling on February 11, 2020. *Id.* at p. 34-35.

{¶ 11} On February 4, 2020, the court filed an order setting a scheduling conference for February 11, 2020. On that date, both Michael and Amy appeared again, and the court stated that it overruled Amy's motion to suppress. Tr. 1, p. 35. The parties then told the court that Michael intended to file a motion to sever the trials, and that Amy would join the motion after reviewing it. *Id.* at p. 35-36. As a result, the court continued the matter until February 25, 2020. The court gave the State a week to respond to any motions to sever and allowed the defendants until February 25 to reply to the State's memorandum. *Id.*

{¶ 12} On February 12, 2020, Michael filed a motion to sever his trial from Amy's, based on the fact that Amy had made statements incriminating and implicating him. Motion to Sever, p. 1. On that date, Michael also filed a motion for a continuance. As a result, the court continued the matter from February 11, 2020 until February 25, 2020.

{¶ 13} On February 25, 2020, Michael and Amy and their attorneys once again appeared in court. At that time, the court set separate trial dates for each defendant. Tr. 2, p. 12. Michael's trial was set for May 11, 2020, and Amy's trial was set for July 6, 2020. *Id.* The court also instructed Michael to submit a proposed entry granting the motion to sever. *Id.* On the same day, the court filed an entry establishing an April 28,

2020 final pretrial and a May 11, 2020 trial date for Michael. An entry was then filed on February 26, 2020, granting Michael's motion to sever the trials.

{¶ 14} During the April 28, 2020 final pretrial hearing, the court discussed a recent Montgomery County Common Pleas Court Order, which stated that no jury trials would occur due to the pandemic. The order was effective through May 15, 2020. Tr. 2, p. 13-14. As a result, the court continued the trial, setting a July 21, 2020 final pretrial and a new trial date of August 10, 2020. *Id.* at p. 15. An entry reflecting these dates was filed the same day.

{¶ 15} The court also filed an order on May 18, 2020, tolling Michael's speedy trial time retroactively from March 9, 2020 to July 30, 2020, or until the Governor's emergency pandemic order was lifted, whichever occurred earlier. Order Tolling Time, p. 3. This was based on various emergency orders that were issued pertaining to the pandemic. *Id.* at p. 1-3.

{¶ 16} In mid-July 2020, Michael filed four motions in limine, asking the court to exclude various evidence from trial.

{¶ 17} During the July 21, 2020 final pretrial, the State asked the court to continue the trial date because two of the State's necessary witnesses (the case detective and an expert witness) would be out of town the week of trial. Tr. 2, p. 16. The State noted that, at that time, ample speedy trial time remained. *Id.* at p. 18. The court then granted the continuance and also granted Michael's release from electronic home detention. However, the court did leave in place the condition, among others, that Michael have no contact with minors. *Id.* at p. 19. A new final pre-trial date was set for September 29, 2020, and trial was set for October 13, 2020. *Id.* at p. 22-23.

{¶ 18} Michael filed two more motions in limine on September 24, 2020. On September 25, 2020, he also filed a motion to dismiss the action, based on alleged violations of his right to a speedy trial.

{¶ 19} A few days later, during the final pretrial, the State told the court that it intended to file a "B" indictment based on new disclosures from another victim. Tr. 2, p. 25-26. These disclosures came from a minor, M.A., who had witnessed some of Michael's alleged sexual misconduct with A.R. Although M.A. did not make discloses when he initially talked to the police, he did later disclose alleged sexual misconduct by Michael when the State was preparing him for trial. *Id.* at p. 25. *See also* State's Response to Defendant's Motion to Sever (Oct. 6, 2020), p. 2.

{¶ 20} On September 30, 2020, the State responded to Michael's motion to dismiss on speedy trial grounds, contending that the time had not elapsed. On October 1, 2020, the court heard arguments on Michael's motions in limine. The court overruled motions one and five, and took motions two, three, four, and six under advisement. Tr. 2, p. 31-61. In addition, the court heard arguments concerning the motion to dismiss. However, Michael elected not to make any oral argument on this issue. *Id.* at p. 61. After Michael's counsel declined to argue, the following exchange occurred:

> THE COURT: Well, the Court would appreciate hearing the particulars of why you think the time has run. We have some very particularized information from the State as to why it has not run. And –
>
> MR. ABBOUD: As I said, Your Honor, we filed a motion in this case. We stand by it. I mean there's no additional argument Defense is making on this matter.

Tr. 2, p. 61. The court then overruled the motion to dismiss based on the State's computations, and said it would file an entry to that effect. *Id.* at p. 62.

{¶ 21} At a hearing on October 8, 2020, the court provided additional reasons for overruling the motion to dismiss. *Id.* at p. 64 and 88-89. On the same day, the court filed an entry overruling that motion as well as Michael's liminal motions one, four, five, and seven.[3] The court reserved rulings on liminal motions two, three, and six. Decision and Entry on Defendant's Motions (Oct. 8, 2020), p. 1.

{¶ 22} In the meantime, the State had filed a B indictment on October 5, 2020. The indictment alleged that between May 2, 2014, and February 26, 2017, Michael had committed one count of unlawful sexual conduct with a minor over 13 years of age and less than 16 years old, a third-degree felony, and, during the same dates, had also disseminated matter harmful to juveniles, a fifth-degree felony. These charges involved M.A. Bill of Particulars, B-Indictment (Oct. 5, 2020). After Michael pled not guilty to these charges, the court returned him to electronic home detention.

{¶ 23} On October 6, 2020, Michael moved to sever the charges in the B indictment, and the State responded the same day. During the October 8, 2020 hearing, the court denied the motion to sever; it also filed an entry on that issue the same day. Tr. 2, p. 88; Decision & Entry (Oct. 8, 2020). Michael filed a motion on October 9, 2020, asking the court to reconsider its decision on his motion to dismiss.

{¶ 24} On October 13, 2020, Michael appeared in court and pled no contest to all the charges in Indictments A and B. Tr. 2, p. 90-108. During the plea hearing, Michael's counsel said he had been advised the prison sentence would likely be similar to the eight-

---

[3] Michael had filed a seventh motion in limine on October 7, 2020.

year sentence Michael's wife had already received. *Id*. at p.1. The court accepted Michael's no contest plea, found him guilty, and set a sentencing hearing for November 10, 2020. *Id*. at p. 104-105. Waivers and plea entries were then filed on October 20, 2020, concerning all the pleas.

{¶ 25} After both sides filed sentencing memoranda, the court sentenced Michael to a total of eight years in prison on the charges, with jail credit of eight days. Tr. 2, p. 108-116. The court further designated Michael as a Tier I offender with respect to some charges and as a Tier II sex offender regarding others, and it imposed registration requirements. *Id*. at p. 113-115. In addition, the court accepted Michael's oral motion for an appeal bond and granted the bond, with continuation of Michael's electronic home detention. *Id*. at p. 114 and 116. A judgment entry reflecting these matters was filed on November 13, 2020. Michael filed a notice of appeal on November 20, 2020.

## II. Speedy Trial

{¶ 26} Michael's sole assignment of error states:

The Trial Court Erred in Denying Appellant's Motion to Dismiss Based Upon a Violation of His Right to Speedy Trial.

{¶ 27} Michael contends that both his statutory and constitutional rights to a speedy trial were violated. According to Michael, 455 days elapsed between August 8, 2019 (the day after his arrest), and October 13, 2020, when he pled no contest to the charges. He claims that of these days, only 137 days were tolled, leaving more than the 270-day limit allowed by R.C. 2945.71(C)(2). In responding to the assignment of error, the State maintains that only 207 days elapsed before Michael's plea, and that time was

within the statutory limits.

{¶ 28} Criminal defendants are guaranteed the right to a speedy trial by the Sixth and Fourteenth Amendments to the United States Constitution and by Section 10, Article I of the Ohio Constitution. *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, ¶ 6, citing *Klopfer v. N. Carolina*, 386 U.S. 213, 222-223, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), and *State v. Ladd*, 56 Ohio St.2d 197, 200, 383 N.E.2d 579 (1978). R.C. 2945.71 to 2945.73 also contain statutory time limits for bringing accused persons to trial. *Id.*

{¶ 29} "Review of a speedy-trial claim involves a mixed question of law and fact. Therefore, we defer to the trial court's factual findings if they are supported by competent, credible evidence, but we review the application of the law to those facts de novo." *State v. Long*, Ohio Slip Opinion No. 2020-Ohio-5363, __ N.E.3d __, ¶ 15, citing *State v. Barnes*, 8th Dist. Cuyahoga No. 90847, 2008-Ohio-5472, ¶ 17.[4] We will consider the statutory claim first, and then discuss the alleged constitutional violation.

## A. Statutory Violation

{¶ 30} "Speedy-trial provisions are mandatory, and, pursuant to R.C. 2945.73(B), a person not brought to trial within the relevant time constraints 'shall be discharged,' and further criminal proceedings based on the same conduct are barred." *Sanchez* at ¶ 7.

---

[4] We have previously held that our review of such decisions is for abuse of discretion. *E.g., State v. Cimpaye*, 2020-Ohio-2740, 154 N.E.3d 415, ¶ 12 (2d Dist.), citing *State v. Cassell*, 2d Dist. Clark No. 2009-CA-64, 2011-Ohio-23, ¶ 12. However, these cases were decided before *Long* was issued. After *Long* was decided, other appellate districts have applied the standard used in *Long*. *State v. Watkins*, 12th Dist. Preble No. CA2020-03-005, 2021-Ohio-163, ¶ 37; *State v. Muhammadel*, 1st Dist. Hamilton No. C-190683, 2021-Ohio-567, ¶ 12.

Under R.C. 2945.71(C)(2), "[a] person against whom a charge of felony is pending: * * * [s]hall be brought to trial within two hundred seventy days after the person's arrest." For computation purposes, "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E). The day of the arrest is not included. *State v. Lee*, 2d Dist. Montgomery No. 20012, 2004-Ohio-668, ¶ 11, citing *State v. Steiner*, 71 Ohio App.3d 249, 250-251, 593 N.E.2d 368 (9th Dist.1991).

{¶ 31} "The running of the speedy-trial clock may be temporarily stopped, that is, tolled, only for reasons listed in R.C. 2945.72." *Sanchez* at ¶ 8. As pertinent here, these reasons include:

(G) Any period during which trial is stayed pursuant to an express statutory requirement, or pursuant to an order of another court competent to issue such order;

(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion.

R.C. 2945.72(G) and (H).

{¶ 32} As noted above, in rejecting the claimed speedy trial violation, the trial court relied on the particularized data in the State's response to the motion. Furthermore, even though the court asked Michael to respond at the hearing on the motion to dismiss, Michael declined to do so. Our computation of the time is as follows.

{¶ 33} Michael was arrested on August 7, 2019, and that day is excluded. He was in jail from then until August 14, 2019, when he was released on home detention. As a result, seven days were counted against the State at a triple-count rate, for a total of 21

days.  Thus, as the State notes in its brief, it then had 249 days within which to bring Michael to trial.  Appellee's Brief, p. 3.

{¶ 34} Twenty-seven additional days were expended from then until September 10, 2019, when Michael filed a motion for continuance, due to his desire to have his case track that of his wife.  Thus, as of that date, 222 days remained on the clock (249 – 27 = 222).

{¶ 35} The continuance was granted from September 10 to October 22, 2019. Continuances that a defendant requests toll the clock under R.C. 2945.75(H), so the State would not have been charged with any time during this period.  Time began to run again on October 22, 2019.  Nothing occurred between then and October 29, so seven more days were charged against the State.  At this point, then, 215 days remained (222 – 7 = 215).

{¶ 36} On October 29, 2019, the case was continued until November 17, 2019, again so Michael's case could track that of his wife, who was obtaining a second competency evaluation.  While this continuance was not journalized, the record reveals that this continuance was at Michael's request.  See State v. Richardson, 2d Dist. Clark No. 03CA92, 2004-Ohio-5815, ¶ 15, citing State v. Stamps, 127 Ohio App.3d 219, 224, 712 N.E.2d 762 (1st Dist.1998) (when the defendant asks for a continuance, "an explanation or reason for a continuance in a journal entry is not necessary").  At this point, the time remaining was still 215 days.

{¶ 37} Nothing further occurred in the record until January 7, 2020.  Thus, 51 more days elapsed, which were charged to the State.  As of that date, 164 days remained (215 – 51 = 164).  The case was then continued until January 15, 2020, when the

suppression motion was heard. Again, this was done because Michael wanted his case to track that of his wife. This time was not chargeable to the State. Between January 15, and February 11, 2020, nothing occurred, and 27 more days were properly charged to the State. This left 137 days remaining on the clock (164 – 27 = 137).

**{¶ 38}** On February 11, Michael told the court that he was going to file a motion to sever his trial. As a result, the court granted a continuance until February 25, 2020, so that responses to the motion could be filed. The court then granted the motion to sever on February 26, 2020. A motion to sever tolls speedy time limits, so no time should be assessed against the State during this period. *See State v. Taylor*, 2d Dist. Montgomery No. 14456, 1995 WL 680052, *12 (Nov. 17, 1995). The time, therefore, remained at 137 days.

**{¶ 39}** Between February 26 and March 9, 2020, nothing occurred, so 12 more days were properly charged to the State. Thus, 125 days remained (137 – 12 = 125). If no more tolling events occurred, the State's ultimate date for bringing Michael to trial would have been July 12, 2020.

**{¶ 40}** As noted, during the February 25 hearing, the court set Michael's trial for May 11, 2020, which would have been within the remaining time allowed for trial. However, due to the coronavirus pandemic, the General Assembly passed, and the Ohio Governor signed, Am.Sub.H.B. 197, which tolled speedy trial times that were set to expire between March 9, 2020 and July 30, 2020. This would apply here, because absent the legislation, Michael's speedy trial time would have elapsed on July 12, 2020. As a result, all time between March 9, 2020 and July 30, 2020, was tolled.

**{¶ 41}** The Supreme Court of Ohio also issued an order on March 27, 2020, tolling

deadlines retroactively for the same period of time. *See In re Tolling of Time Requirements Imposed by Rules Promulgated by Supreme Court & Use of Technology*, 158 Ohio St.3d 1447, 2020-Ohio-1166, 141 N.E.3d 974.

{¶ 42} On April 4, 2020, the Supreme Court of Ohio issued guidance on how to interpret Am.Sub.H.B. 197 and that court's March 27, 2020 tolling order.[5] The court explained that "Tolling effectively freezes time from March 9 until the expiration of the order. For example, if a deadline was set to expire on March 19 (10 days after the effective date of the order), then the deadline will now expire 10 days after the end of the emergency period. In contrast, if a time requirement expires on August 1, it still expires on August 1."

{¶ 43} Here, since Michael's speedy trial deadline was set to expire 125 days after the effective date of the tolling orders, it would then expire 125 days after July 30, 2020, or on December 3, 2020. As the State notes, the time between March 9, 2020, and July 30, 2020, did not count against the State.

{¶ 44} During the April 28, 2020 final pretrial, the court continued the May 11, 2020 trial because the Montgomery County Common Pleas Court had ordered that no jury trials could take place until at least May 15, 2020. At that time, the court orally continued the trial until August 10, 2020. The court then filed an order on May 18, 2020, continuing the trial until August 10, 2020. The court's decision referenced the Ohio Governor's April 2020 "shelter in place" order, which had been extended to May 1, 2020; the Ohio Health Director's order banning mass gatherings; Am.Sub.H.B. 197; the Ohio Supreme Court's

---

[5] *See* https://www.supremecourt.ohio.gov/coronavirus/resources/tollingAnalysis 040220. pdf (*ASSESSING IMPACT of Tolling Legislation and Supreme Court Order upon Specific Time Requirements* (accessed May 18, 2020).

Tolling Order; and the Montgomery County Common Pleas Court's Emergency Temporary Orders, which had suspended jury trials and had extended speedy trial deadlines.[6]   Order Tolling Time (May 18, 2020), p. 1-2.

**{¶ 45}** Michael argues that the trial court's continuance on its own motion was unnecessary because the Supreme Court of Ohio later reversed its position and allowed a common pleas court to hold an in-person criminal trial.   Appellant's Brief at p. 13.

**{¶ 46}** The Ohio Supreme Court case Michael refers to is *State ex rel. Stone v. Forsthoefel*, 158 Ohio St.3d 1486, 2020-Ohio-2675, 143 N.E.3d 527.   According to the docket in that case, a criminal defendant filed an original action and petition for writ of prohibition and mandamus, seeking to prevent the trial court from proceeding with his trial during the pandemic.   The defendant had already waived his speedy trial rights.   The trial judge who was named in the action filed a motion to dismiss, arguing, among other things, that:

> Relator further cites this Court's March 27, 2020 administrative order tolling all "time limitations, deadlines, and other directives related to time," as well as this Court's March 30, 2020 guidance bulletin to local courts. Amended Petition, ¶¶ 18-19.   The former order was apparently issued pursuant to this Court's authority to promulgate procedural rules for the inferior courts throughout the state.   The latter document, clearly termed as

---

[6] Common Pleas Court Orders can be found at https://montcourt.oh.gov/wp-content/uploads/2020/03/Temporary-Emergency-Order-Entry-3-16-2020.pdf, and https://www.supremecourt.ohio.gov/coronavirus/courts/Montgomery/CPGeneral_051220.pdf (both accessed on May 19, 2021).   The first order was filed on March 16, 2020, and suspended jury trials for 30 days.   A second order of April 6, 2020, suspended jury trials until May 15.   A final administrative order, filed on May 12, 2020, suspended jury trials until May 31, 2020.

"guidance," does not purport anywhere to be binding upon inferior courts. It specifically states that "no one solution…will be appropriate for every court" and asks courts to consider, under existing authority, granting continuances for non-essential court appearances, with a suggested definition for essential proceedings. Exhibit 3. This is simply not enough to establish any legal duty for the Court to continue a trial, nor a clear legal right on the part of the Relator for a continuance to be granted.

Respondent Judge Ronald P. Forsthoefel's Motion to Dismiss Pursuant to Civ. R. 12(b)(6) and Memorandum in Opposition to Motion for Emergency Stay (Apr. 24, 2020), p. 5-6.

{¶ 47} The Supreme Court of Ohio did dismiss the action, but it included orders to the trial court regarding social distancing and precautions to be taken during the trial. However, this was not a "reversal" of the court's prior position, because the March 27, 2020 Administrative Order did not prohibit jury trials. Furthermore, what happened in *Stone* is irrelevant here. Both the Administrative Order and Am.Sub.H.B. 197 tolled speedy trial times, which is the pertinent issue. Furthermore, when the trial court continued the case, it was following the orders of its own court, which did not allow jury trials to take place.

{¶ 48} Michael also notes that a jury trial was held in one case in the Montgomery County Common Pleas Court that was originally scheduled for April 28, 2020, was continued, and then proceeded to trial on June 1, 2020. Appellant's Brief at p. 13. The Montgomery County Common Pleas Court case to which Michael refers is *State v. Wright*, Montgomery C.P. No. 2019-CR-2281. *See* Exs. B and C attached to Motion to Reconsider Defendant's Motion to Dismiss (Oct. 9, 2020).

**{¶ 49}** According to the online docket in that case, the original trial date was set for October 7, 2019, was continued a number of times, and was set for trial on April 27, 2020.[7]   On April 28, 2020, the court put on an order nearly identical to the order here, finding that the jury trial must be continued due to the pandemic.   The court stated that the first time the case could be tried, given the court's and counsels' schedules, was June 1, 2020.   *See State v. Wright*, Montgomery C.P. No. 2019-CR-2281, p. 4 (Entry, Apr. 28, 2020).   The case was then tried on June 1, and the jury's verdict was rendered on June 3, 2020.   Motion to Reconsider Defendant's Motion to Dismiss, Ex. C.

**{¶ 50}** Notably, when the court continued Michael's trial, which was set for May 11, 2020, it stressed that "the Common Pleas Court has issued an order that no jury trials will be occurring due to the current pandemic and as that order stands that order goes through May 15th which would eliminate this trial date."   Tr. 2, p. 13-14.   The fact that a trial in another case was subsequently held on June 1 (after the May 15th date) is irrelevant. The schedules of the court and parties were obviously different from the schedules here, and any comparison would be pointless.   In addition, the court in the case before us specifically noted that the trial was being rescheduled for the earliest date the court felt was safe.   Order Tolling Time (May 18, 2020), p. 3.

**{¶ 51}** Returning to the time computation, the State notes that nothing occurred between July 30, 2020, and September 25, 2020, and that 57 more days elapsed, which

---

[7] Thus, trial was scheduled for April 27, not April 28.   "Under established law, courts may appropriately take judicial notice of judicial opinions and public records that are accessible via the internet." (Citations omitted.) *State v. Carr*, 2d Dist. Montgomery No. 28360, 2020-Ohio-42, ¶ 4, fn. 2.

were chargeable to the State.   We agree that the State's request for a continuance would not stop the clock.   However, other matters did.

{¶ 52} When the court continued the May 11, 2020 trial, it set another trial date for August 10, 2020.   At the final pretrial on July 21, 2020, the State asked the court to continue the trial because two of the State's necessary witnesses (the case detective and an expert witness) would be out of town the week of trial.   Tr. 2, p. 16.   The court agreed, and it continued the trial until October 13, 2020, which was the earliest time available due to the busy schedules of counsel for both sides.   *Id.* at p. 18 and 20-22.

{¶ 53} Under R.C. 2945.72(H), time is tolled during any continuance requested by the defendant and during any reasonable continuance required by the state or the court. Besides being "reasonable," a continuance for the benefit of the State or the court must be "necessary."   *State v. Ramey*, 2012-Ohio-6187, 986 N.E.2d 462, ¶ 20 (2d Dist.), citing *State v. Saffell*, 35 Ohio St.3d 90, 91, 518 N.E.2d 934 (1988).   Whether such a continuance is reasonable and necessary "depends on the peculiar facts and circumstances of a particular case."   *Saffell* at 91.   However, "the trial court must journalize the continuance before the expiration of the time limit set forth in R.C. 2945.71, and must state in its journal entry the reasons for the continuance."   *State v. Richardson*, 2d Dist. Clark No. 03CA92, 2004-Ohio-5815, ¶ 14; *Ramey* at ¶ 20.

{¶ 54} Here, the trial court did not put on such an entry (or any entry), so we agree that the State, to this extent, cannot toll the clock.   If that were the only consideration, the 57-day period between July 30 and September 25, 2020, would correctly be charged to the State.

{¶ 55} However, on July 15, 2020, Michael filed three motions in limine.   He then

filed another motion in limine on July 17, 2017. Although these motions were filed before the end of the pandemic tolling period, that does not mean they should be excluded for purposes of tolling speedy trial time.[8] The law is settled that "a motion in limine filed by a defendant tolls speedy-trial time for a reasonable period to allow the state an opportunity to respond and the court an opportunity to rule." *Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, at ¶ 27. *Sanchez* did not establish a specific time period, other than noting that local rules often supply outside time limits for replying to motions. *Id.* Reasonable time periods for court resolution of such motions also vary. *E.g., State v. Perry*, 2018-Ohio-3940, 120 N.E.3d 446, ¶ 26 (7th Dist.) (six weeks); *State v. Wilson*, 2d Dist. Clark No. 2018-CA-2, 2020-Ohio-2962, ¶ 33 (delay of nearly three months was reasonable).

**{¶ 56}** During the final pretrial conference on July 21, 2020, the court said it had briefly reviewed the motions in limine and that most of them needed to be set for a hearing. Tr. 2, \ p. 20. The court then set a hearing on these motions for September 29, 2020, which was the day the court had already set aside for the final pretrial. The court's action was reasonable, given the variety of the issues the motions raised. Specifically, they sought to exclude admission of expert testimony, "hundreds of pages" of content from three Facebook accounts, nude photos of Michael, and the testimony of Michaels's wife. *See* Motions in Limine and Tr. 2, p. 41.

---

[8] Michael also filed additional motions on July 23, 2020, which included a motion for a bill of particulars, even though the State had already provided one to Michael on September 9, 2019, and a motion for discovery and "*Brady* materials." "A demand for discovery or a bill of particulars is a tolling event pursuant to R.C. 2945.72(E)." *State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, 781 N.E.2d 159, syllabus. Thus, these motions would also have stopped the clock.

{¶ 57} Furthermore, Michael filed two additional liminal motions on September 24, 2020, and a final liminal motion on October 7, 2020. The first two motions attempted to exclude all counseling and medical records of A.R., all expert testimony of A.R.'s two counselors, all of A.R.'s journals, and A.R.'s testimony about the journals. The final motion asked for redaction of A.R.'s Care House interview to limit any "other acts" statements regarding acts with Michael's wife, Amy.

{¶ 58} Discussing and resolving the liminal motions took a substantial amount of time. In fact, during the September 29 hearing, the court deferred resolution of some matters until it could conduct an in-camera review or until the parties submitted additional legal authority. In a few situations, the court deferred resolution until trial. Tr. 2, p. 41, 46, 47, 49-50, 59, and 60-61.

{¶ 59} Further discussion of the liminal motions continued on October 8, 2020. Tr. 2, p. 62 and 70-81. Ultimately, the court filed an entry on October 8, 2020, overruling motions in limine one, four, five, and seven, and taking motions two, three, and six under advisement. Decision and Entry on Defendant's Motions.

{¶ 60} Because all this time was reasonable, we would not charge any time between July 15, 2020 and October 8, 2020 to the State. Instead, that time would be tolled. Since all this time was tolled, as of October 8, 2020, 125 days still remained before Michael had to be brought to trial.

{¶ 61} The State also indicates that no tolling events took place between October 8 and October 13, 2020, which results in a charge of five days more against the State. Accepting the State's position means that on the day Michael pled no contest, 120 days still remained under the speedy trial statute. However, we also would not charge that

time against the State because Michael filed a motion on October 8, 2020, asking the court to reconsider its decision on the motion to dismiss.

{¶ 62} "A motion to dismiss under speedy trial grounds operates to toll the statute." *Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, at ¶ 28. If a motion to dismiss tolls the statute, logic dictates that a motion to reconsider a decision on dismissal would also have a tolling effect.

{¶ 63} In the case before us, the trial court did not rule on the motion to reconsider. Generally, " 'if the trial court fails to mention or rule on a pending motion, the appellate court presumes that the motion was implicitly overruled.' " *State v. Matthews*, 2d Dist. Greene No. 2015-CA-73, 2016-Ohio-5055, ¶ 15, quoting *State v. Davis*, 9th Dist. Medina No. 07CA0028-M, 2008-Ohio-999, ¶ 5. (Other citation omitted.) However, the court's failure to rule on reconsideration is irrelevant, because only five days elapsed between the time the motion was filed and when Michael pled no contest. Five days would have been a reasonable amount of time for the court to reconsider the motion, particularly since Michael attached exhibits.

{¶ 64} Accordingly, we conclude that as of October 13, 2020, the State still had 125 days left within which to try Michael, and no statutory violation existed. Furthermore, of the 270 day total, only 145 days were chargeable to the State.

{¶ 65} Even if we ignored the many tolling motions Michael filed between July 15, 2020 and October 13, 2020, the time limits were still not violated. As the State notes, the tolling period from the pandemic orders lasted until July 30, 2020. On September 25, 2020, Michael filed a motion to dismiss based on speedy trial grounds. As we said, such a motion operates to toll the speedy trial statute. *Sanchez*, 110 Ohio St.3d 274,

2006-Ohio-4478, 853 N.E.2d 283, at ¶ 28.

**{¶ 66}** As the State notes, 57 days elapsed between July 30 and September 25, 2020.   Thus, by September 25, 2020, 68 days remained on the clock.   (125 – 57 = 68). The trial court denied the motion on October 8, 2020, which was a reasonable amount of time, particularly given the number of motions that were filed between July and October 2020.   This means that if time were not further tolled, the State would have had 68 more days within which to bring Michael to trial.

**{¶ 67}** Michael pled no contest on October 13, 2020, which was within the remaining 68-day period.   However, as we said, by our calculations, the State still had 125 days within which to bring Michael to trial.

**{¶ 68}** Accordingly, the trial court did not violate the 270-day time limit in R.C. 2945.71(C)(2).

### B.   Constitutional Claims

**{¶ 69}** Michael also contends that the delay in bringing him to trial violated his constitutional right to a speedy trial.   In this regard, Michael argues that: (1) the length of the delay weighed against the State; (2) the State was more to blame for reasons for the delay (pandemic orders and the State's request for a continuance); (3) he asserted his speedy trial rights; and (4) he was prejudiced by the delay because his rights were severely restricted due to electronic home detention and he was caused anxiety and concern.   Michael further contends that the delay was preemptively prejudicial because he was only chargeable with 70 days of the tolled time.

**{¶ 70}** According to the State, after accounting for delay attributable to Michael,

the remaining period was not uncommonly long. Moreover, 143 days of the delay was caused by the coronavirus pandemic, which cannot be attributed to the State. The State further notes that Michael's speedy trial motion made only a blanket, unsubstantiated claim that his defense was prejudiced, without identifying any witnesses to whom he might be referring. And finally, the State argues that Michael's last 84 days before entering his plea were on his own conditional recognizance. Accordingly, the State argues that Michael was not prejudiced by the delay such that his constitutional rights were violated.

{¶ 71} " 'The Sixth Amendment right to a speedy trial is * * * not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.' " *State v. Triplett*, 78 Ohio St.3d 566, 568, 679 N.E.2d 290 (1997), quoting *United States v. MacDonald*, 456 U.S. 1, 8, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982).

{¶ 72} "To determine whether a defendant has been deprived of these constitutional speedy-trial rights, a court must balance four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of a speedy-trial right, and (4) the prejudice to the defendant." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 88, citing *State v. Selvage*, 80 Ohio St.3d 465, 467, 687 N.E.2d 433 (1997), and *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

{¶ 73} As a threshold matter, however, unless there is " ' "some delay *which is presumptively prejudicial*," ' " courts do not need to engage in the balancing test. (Emphasis sic.) *Adams* at ¶ 89, quoting *State v. Hull*, 110 Ohio St.3d 183, 2006-Ohio-4252, 852 N.E.2d 706, ¶ 23. (Other citation omitted.) "[T]he length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker* at 530-531. "Depending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year. * * * [A]s the term is used in this threshold context, 'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." (Citations omitted.) *Doggett v. United States*, 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), fn. 1. *See also Adams* at ¶ 90.

{¶ 74} Based on our discussion concerning the statutory speedy trial right, we do not consider that the delay between Michael's arrest and his plea was "presumptively prejudicial," even though it exceeded one year. However, for the sake of argument, we will assume it was enough to trigger the balancing test. Concerning analysis of the reasons for delay, the United States Supreme Court has said that:

A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve

to justify appropriate delay.

(Footnote omitted.) *Barker* at 531.

{¶ 75} Contrary to Michael's contention, the State was not responsible for most of the delay. Of the 455-day delay, the pandemic and orders issued in that context caused 143 days of delay, and the State's actions caused 145 days, for a total of 288 days. The rest of the 455-day period, which was substantial, was attributable to Michael's actions. While defendants are within their rights to take such actions, they cannot blame the State for the delay.

{¶ 76} "Only the portion of the delay which is attributed to the government's neglect is to be weighed in a defendant's favor." *Triplett,* 78 Ohio St.3d at 569, 679 N.E.2d 290, citing *Doggett* at 658. The State was not responsible for the unusual circumstances surrounding the pandemic, and there is no evidence of any State neglect. As a result, this factor does not aid Michael's claim.

{¶ 77} Michael did timely assert his speedy trial rights, so that point is in his favor, but not heavily, because he waited almost until the final trial date to assert his claim.

{¶ 78} The fourth factor, prejudice, also does not assist Michael. In *Barker*, the court stated that prejudice should be evaluated in light of three interests that the speedy trial right is intended to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532, 92 S.Ct. 2182, 33 L.Ed.2d 101.

{¶ 79} In *Barker*, the court distinguished between pretrial incarceration and

awaiting trial while not jailed. Pretrial incarceration is detrimental because it "often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense." *Id.* at 532-533. Here, Michael was not incarcerated; he was on electronic home detention with his wife. There is no indication that it caused a disruption in his employment, nor was there any indication that Michael was inhibited in his ability to prepare a defense.

**{¶ 80}** As to situations where an accused person is not incarcerated before trial, *Barker* stated that "even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility." *Id.* at 533. Michael stated that he had anxiety and concern, but failed to distinguish his situation from any other criminal defendant who is facing serious charges and incarceration. Furthermore, Michael was free on his own conditional recognizance without home detention for nearly three months of the time the case was pending.

**{¶ 81}** Concerning the third and most important interest (ability to defend), the State stresses that other than making general statements about witness recollection being diminished, Michael did not mention any specific witness or point to any particular way in which the recollection of a witness may have been diminished. We agree. Michael also did not mention any evidence that may have been impacted. He could have rectified these deficiencies when the court considered the motion to dismiss. However, when given a chance to elaborate, Michael elected to stand on what he had submitted in

his written motion.

**{¶ 82}** After weighing all the factors, we agree with the trial court that Michael's right to a speedy trial was not violated. Accordingly, Michael's sole assignment of error is overruled.

### III.  Conclusion

**{¶ 83}** Michael's assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and EPLEY, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
J. David Turner
Hon. Gregory F. Singer